RuffiN, J.
 

 In the instructions given to the jury, the Court is unable to discover any error to the prejudice of the prisoner. It is manifest upon the evidence, the course taken by the defense, and the instructions prayed, that the fact of the homicide was not a point in controversy, but that it was as to the manner and circumstances attending it. For the prisoner, it was contended that the three witnesses, who represented themselves to have been present at the fact, had not, in their testimony truly stated the transaction, and, particularly that Elizabeth Holt had not; but that, on the contrary, the truth was as she had related the matter to Margaret Porter, and, therefore, it was but a case of manslaughter. It is proper to observe here, that the position is entirely untenable, although his Honor, inadvertently, no doubt, fell into it. For the only legitimate effect of the testimony of Porter, was to discredit that of Elizabeth Holt, and, if true, it did not constitute substantive evidence of the circumstances attending the killing ; since, at best, it was but the narrative of Elizabeth Holt, not under oath, and could not legally establish any thing affirmatively. It was in reference to that point, in his instructions, his Honor made the remark, that such evidence — of what a
 
 *431
 
 person had said, was considered the weakest hind of evidence; and, therefore, whether the remark be correct or incorrect, it cannot affect the question now before the Court.
 

 The shape, then, which the defense took, imposed the bur-ben on the prisoner of producing proof of such facts and circumstances as would mitigate the offense ; otherwise the inference of the law is, that it is murder. There was no error, therefore, in assuming the killing to be established, and in so saying to the jury. Still it was open to the prisoner to urge before the jury, that there must have been other circumstances attending the homicide, which the witnesses for the State had not disclosed, but dishonestly kept back, and which, therefore, if disclosed, it might be inferred, would give a different complexion to the killing; such as the kindred, and friendly relations between the parties up to the morning of the fatal affray, and the improbability of the prisoner’s being prompted to such a deed by the trivial circumstances that the deceased had given his younger brother a slight slap, for irreverent language to their mother, an aunt of the prisoner; and, in addition, and above all, that the most material witness for the State, as to the overt act, had stated to another person other facts attending the killing, which, if true, showed it to be an immediate and sufficient provocation to reduce the offense to manslaughter. All these considerations were, doubtless, urged before the jury, and seem to have been fairly left to them by the Court. In truth, the case turned upon the veracity and accuracy of the witnesses on the part of the prosecution ; and the verdict can only be sustained by the credence which the jury gave to them. The jury having found the prisoner guilty on their evidence, there is no power in this Court to disturb the verdict.
 

 With respect to the instruction prayed, that the jury had a right to look to the account of the affair given by the prisoner in his defense, and compare the testimony with it, and in that way probably ascertain the truth, there seems to have been some misapprehension both on the part of the Court and the counsel for the prisoner. In England, formerly, the accused,
 
 *432
 
 not being entitled to counsel, conducted bis own defense, and, in making it, as almost every unprofessional person would,he did not confine himself to the evidence at the trial, but, naturally gave his own version of the transaction. That was not evidence, in the proper sense of the term, of the facts stated by the accused, but still the statement might be, and often was, considered by the jury as suggestions affecting the credit of the witnesses, the weight to be given to the facts deposed to by them, the probability of the opposing tales and the proper inferences from the proofs. Ho such practice is known among us : though, if one choose to conduct his own defense, juries would probably pay the same regard to such suggestions and arguments as they formerly did. In place of such a mode of proceeding, defense by counsel universally prevails here, and the argument and suggestions by the counsel, both as to the matter of law and fact are heard by the jury, and always submitted by the Court to their consideration in forming their conclusions upon the subject in controversy. It was done in express terms in this case, and, therefore, while his Honor declined giving the fourth instructions prayed, on the ground, that the prisoner had not given any such account of the affair as was supposed in the instruction, he had, in effect and substance, given it before. For, after laying before the jury the position of the prisoner’s counsel, that the killing took place under such circumstances of legal provocation as extenuated it from murder to manslaughter, the Judge told them it was their duty to take into consideration all the evidence, and also the arguments of counsel, both for the State and the prisoner. There was, therefore, no error in that part of the case.
 

 The only remaining question is upon the rejection of the evidence of ’WilliamUeville, the son of the prisoner. The prisoner offered to prove by him, that on the evening preceding the homicide, the deceased came to the prisoner’s house, and had the prisoner’s wife on the bed with her clothing up, and attempted to ravish her. To what end was the evidence offered ?— Obviously, to establish a provocation for the killing — the idea
 
 *433
 
 wliicli pervaded the whole trial. Eor that purpose, it was not proper evidence, and ought to have been rejected. If admitted and believed, it could not have changed the character of the offense, but would, in the view of the law, aggravate it. As, upon an analogous question, somewhat alrin to this, namely, a husband’s killing an adulterer with his wife, the Court would hold that a husband finding a man violating or attempting to violate his wife, and killing him on the spot, might plead
 
 tlvAt furor brevis
 
 which so atrocious a wrong, both to the wife and the husband would naturally inspire; nay, if needful to prevent the accomplishment of the purpose, we think that he would be justified in slaying him ; as the woman herself would be. But a due regard for human life, and the necessity of protecting it from unbridled wrath and vengeance, and a just respect for the peace of society, and the supremacy of the law, which constitute the well being of every community, restrain any further relaxation of the rule which forbids one man to take the life of another. With respect to the case of adultery, the law is found in the most ancient archives of the common law, and has been brought down to us in the same plain and precise terms by the ablest Judges, and the most eminent writers on the criminal law; and a court at this day has no more authority to interpolate new qualifications or exceptions into it, than power to make a statute. But the rule of the common law on this head, stands not alone on its authority. It is commended, as well, by its wisdom. Homicide is extenuated to manslaughter, not by the fact that it was perpetrated in a fury of high passion, but by such fury’s being excited by a present provocation, which the law deems sufficient for the time, to deprive men in general of that power of reasoning and reflection, which ought to lead them to appeal for redress to the law, and instead thereof, prompts them to take it into their own hands. The wrong is thus infallibly known, and the wrongdoer is thus made instantly to expiate it with his blood. But where a husband only hears of the adultery of his wife, no matter how well authenticated the information may be, or how much credence he may give to the informer,
 
 *434
 
 and kills either the wife or her paramour, he does it not upon present provocation, but for a past wrong — a grievous one indeed ! but it is evident he kills for revenge. Let it be considered how it would be if the law were otherwise. How remote or recent must the offense be ? How long or how far may the husband pursue the offender? If it happen that he be the deluded victim of an lago, and after all, that he has a chaste wife, how is it to be then ? These enquiries suggest the impossibility of acting on any rule but that of the common law, without danger of imbruing men’s hands in innocent blood, and the certainty of encouraging proud — heady men to slay others for vengeance, instead of bringing them to trial and punishment by the law. It is obvious that these observations apply with equal force to an alleged rape, or an attempt to commit a rape on the wife at a past time; and this case furnishes a forcible illustration of the extreme hazard of extenuating the offense of taking the life of a fellow man, upon information. The wife of the prisoner made no complaint to him on his arrival at home, that the deceased had assaulted her or insulted her; but, on the contrary, the deceased was entertained by them both that night in friendship, and the prisoner and the deceased hunted together next morning by themselves— thus rende.iing the imputed act extremely improbable. Yet, it is assumed by the prisoner, that upon hearing from his son, who was just of an age to be a competent witness, that the deceased had misbehaved towards his mother, he might, without regard to the improbability of the accusation as known to himself, and without making any enquiry of his wife, proceed to the residence of the deceased and shoot him down, and that he would not be guilty of murder. Such a position is altogether inadmissible. The Court is therefore of opinion, that the evidence was not admissible for the purpose for which it was offered ?
 

 It was further argued that it ought to have been received for the purpose of sustaining the credit of Margaret Porter, and impeaching that of Elizabeth Holt. Although it did not relate to the matter on which the two witnesses were at points,
 
 *435
 
 that is the narrative by Ilolt of the circumstances attending the killing, yet it must be admitted to have at least a remote relevancy to the credit of those persons, inasmuch as the probability that Elizabeth Holt made the statement to Porter deposed to by the latter, would be increased by showing that in point of fact, those circumstances really existed, of which the prisoner complained to the deceased during the altercation according to the alleged narrative of Holt to Porter.— But the Court is of opinion, nevertheless, that the prisoner is not entitled to a
 
 venwe de novo
 
 on that grounds The evidence was not offered for that purpose. At least-, nothing of the kind is to be collected from the bill of exceptions-. Counsel are bound to state the evidence they propose to offer, and its purpose; else it is impossible that the Court, a stranger to the case, can see its relevancy, or properly restrict counsel in their remarks on it to influence the jury as to its effect; and when evidence is offered for the general purpose of affecting the degree of a homicide which is irrelevant to that point, and is for that reason rejected, there is no error in rejecting it generally, although it may be competent for a more restricted purpose, unless the party ask its reception for that purpose, and that only. For in no other way can a court know that the party desires it, or would be willing to rely on it, or that it should be given for that particular purpose. For example, in the case before us, it might well be doubted whether the prisoner would gain any advantage from the evidence, merely as affecting the credit of the two witnesses. While on the other hand, if believed, it might sustain, in the manner already mentioned, the credit of Porter in deposing to the declarations of Elizabeth Holt, yet, on the other, taken in connection with the age of the son, and the silence of the wife as to the alleged wrong to her, and also the silence of the witness himself to his father on his getting home, and during the night, and the friendly entertainment of the deceased by all the parties, it might have laid the ground of a serious suspicion that the whole story was the fabrication of afterthought-, and that those two young persons were made the instruments for unjustly de
 
 *436
 
 stroying the credit and character of Elizabeth Holt. Of course, the Court will not be understood as making that imputation. It is alluded to for the purpose, only, of showing that it was not for the Court, at the trial, to receive the evidence for a restricted purpose, when it was not offered for such purpose, and when it is plain that the prisoner might rather give up the evidence restricted to that purpose, than risk its recoil. To allow him the benefit of it upon a motion for a
 
 venire de novo,
 
 would be but little short of inviting counsel, instead of getting a fair trial for the accused, to lay traps for the presiding Judge, and beguile him into them.
 

 There is no error, and this must be certified to the Superior Court of Halifax.
 

 Pee Oueiam, Judgment affirmed.