* JUDGE BATTLE, being a stockholder in the railroad, took no part in the decision of this case.
The following is the case agreed between the counsel of the parties:
The declaration contained two counts: First, against defendant, as "common carriers, and second, as warehousemen." The facts are, that about 1 May, 1859, the plaintiffs delivered to defendant a box of merchandise of the value of $390, at Weldon, to be transported from that place to Rocky Mount. The goods were transported and delivered in the warehouse of defendant at the latter place, and on the day after the arrival, or the second day thereafter, the plaintiffs applied for the box, and on examination it could not be found in the warehouse, but was found, the same day, a few hundred yards from the station, broken open and rifled of its contents. The warehouse was an ordinary wooden building, such as the company had at the other stations, except at Weldon, Goldsboro, and Wilmington, where they are made of brick. The company receives large amounts of freight at this station for persons residing in Tarboro and Nashville and their vicinity. The warehouse usually had in (483) it goods of considerable value, and the company had no watch or guard at night for its protection. The agent resided about two hundred yards from the station. The doors of the warehouse were secured by locks, bolts, and bars in the usual manner at night, and in like manner in the daytime when the agent was absent. The plaintiffs resided and did business in Tarboro, about eighteen miles distant, and there was a daily mail from Rocky Mount to Tarboro. The company did not give notice of the arrival of the goods. The defendant is an incorporated company, and has been duly organized.
It is agreed that if the court shall be of opinion that the plaintiffs are entitled to recover, judgment shall be rendered for $390, with interest from 1 May, 1859, and cost of suit; but if a contrary opinion, judgment of nonsuit shall be entered.
The court being of opinion with the defendant on the case agreed ordered a nonsuit, from which the plaintiffs appealed.
The facts of this case are similar to those presented in the case ofHilliard v. R. R., 51 N.C. 434, and our reflections lead us to the same general conclusions.
Where freight is carried on a railroad from station to station, if the consignee or agent be not ready to receive it at its destination, the duty of the carrier is discharged by placing it in the warehouse of the company, for there is no usage or rule of law which requires the company's servants to deliver elsewhere than at the station, and from the nature of this mode of transportation, it is impracticable to give notice prior to the necessary discharge of the freight. We think, therefore, the duty of *Page 369 
the company as a common carrier is fulfilled when the packages are placed in the warehouse of the company (no person being present to receive them), without giving notice to the consignee or agent. The exigencies of transportation by steam require this. (484)
Other duties then devolve upon the company, viz., those which appertain to a bailment for transportation. The point first occurring in this view of the case is whether the duty to notify owners or consignees belongs to this particular kind of trust. We do not think it necessary to discuss how this may be in all cases. In the particular one before us it was not, as we conceive, the duty of the company. The party by whom the package was owned and to whom it was directed resided at the distance of eighteen miles from the station, and had no agent at the place. It cannot be that the warehousemen of the company were required to notify through the mail. The great number and variety of articles transmitted by this mode of conveyance through our country would make such a duty extremely burdensome, if not impracticable. What may be the rights of the consignees residing at the station we leave undecided. Those who reside at distances, making communication inconvenient except through the mails, are not entitled to notice.
The remaining question presented by the case, in the point of view we are now considering, is whether the company as warehousemen took the proper care of the packages in question. Ordinary care is what is required, and this is defined by a recent elementary treatise (Story on Bailments, sec. 41) to be "that which men of common prudence, generally exercise about their own affairs in the age and country in which they live." We have attentively considered the facts bearing upon this inquiry, and conclude there is nothing to show a want of requisite care. The house is of the kind used by prudent men to store things of value. It is secured by fastenings appropriate to such buildings — is kept by an agent, who resides a short distance from it and who closed it by its fastenings at all times, both night and day, when he was absent from it. This satisfies the definition of ordinary care. There may be conditions of a city or other community making a night-watch a proper safeguard, but there is nothing in the previous general history of our country places or in the proofs respecting this particular (485) locality which induces us to think that it was demanded there by the requirements of ordinary care.
Upon the whole case, we concur in the opinion of the court below, and the judgment of nonsuit should, therefore, be
PER CURIAM. Affirmed.
Cited: Turrentine v. R. R., 100 N.C. 386; Daniel v. R. R., 117 N.C. 603;Lyman v. R. R., 132 N.C. 725. *Page 370