P. A. NICHOLSON AND J. T. NICHOLSON v. EUREKA LUMBER
COMPANY.

(Filed 27 September, 1911.)

**1. Evidence—Ancient Documents—Self-evidence—Circumstances.**

Ancient documents relative to the inquiry, bearing date or
purporting to bear date at or before a period of thirty years
prior to the time they are offered in evidence, are admissible
without the ordinary requirements of proof of execution or as to
handwriting, when produced from a proper or natural custody,
free from suspicious circumstances or those indicative of fraud
or invalidity; and these preliminary requirements are for the
determination of the court.

**2. Same—Supporting Evidence—Questions for Jury.**

It is not now necessary that when an ancient document is
offered in evidence as a muniment of title it should be fortified
by some evidence of possession or occupation under and con-
sistent with the purport of the instrument; but its presence or
absence is a relevant circumstance for the consideration of
the jury after the document has been received in evidence.

**3. Evidence—Handwriting—Nonexpert Witnesses.**

A witness, whether an expert or another, who has acquired
knowledge and formed an opinion as to the character of a per-
son's handwriting from having seen such person write or from
having, in the ordinary course of business, seen writings pur-
porting to be his and which he has acknowledged or upon which
he has acted or been charged, may give such opinion in evidence
when a relevant circumstance.

**4. Same—Comparisons.**

A witness, whether an expert or not, who has been properly
allowed to express an opinion as to the handwriting of a given
paper, on being shown a writing admitted to be genuine, etc.,
may show the two papers to the jury and, by making comparisons
between them, explain and point out the similarity or difference
between the two.

**5. Same—Ancient Documents—Muniments of Title.**

It is competent for a witness to testify to the genuineness of
the signature or handwriting of an ancient document, who in
the course of his duties has had full opportunity and frequent
occasion to observe and note the handwriting in other ancient

documents which are entirely free from suspicion, and who states that he has thus been enabled to form a satisfactory opinion as to the handwriting of the document in question.

### 6. Same.

In an action involving title to lands, where the location of. a certain corner will control the location of the *locus in quo*, and wherein the genuineness of a certain certificate of survey purporting to have been made by the common ancestor is germane to the inquiry, it is competent for the witness, a grandson, to testify to the genuineness of the writing when shown to him on the stand, after he has testified that he and his father are surveyors; that he knew by his family reputation that his grandfather was one likewise; that since he had become a surveyor his father had frequently, while looking over the old papers of his grandfather, informed him, "This is your grandfather's signature"; and that the witness had been afforded opportunity to observe and note such signature as surveyor to numerous papers coming under inspection in the line of his duty.

### 7. Evidence—Plats, etc.—Jury's Deliberations—Appeal and Error.

It is reversible error for the trial judge, under objection, to permit the jury to take plats of or certificates relating to the location of disputed lands to their room and inspect them in their deliberations. .

APPEAL from *Joseph S. Adams, J.,* at December Term, 1910, of BEAUFORT.

Civil action of trespass, involving an issue as to title. On said issue as to title there was verdict for defendant, judgment, and plaintiff excepted and appealed.

*Nicholson & Daniel for plaintiffs.*
*Wiley C. Rodman for defendant.*

HOKE, J.   On the trial it appeared that both parties claimed under Ruel Windley, deceased, who by his last will and testament, bearing date in 1854, made disposition of certain real estate as follows: "I give and devise to my two grandsons, George C. Respess and John B. Respess, all of my river shore lands, lying on the north side of Pamlico River and known as the William Windley, deceased, lands, excepting 100 acres which I shall lend to Ruel W. Jordan and given to his children, and

NICHOLSON *v.* LUMBER CO.

also except 100 acres which I shall give to my friend, James
Windley, and the rest of the said tract to be equally divided
between the said George and John B. Respess.

"Item 2: I give and bequeath to my friend and relative,
James Windley, for favors done me by him, the following tract

of land lying near the waters of Old Town Creek and beginning
at or near the head of Ash Branch at an oak, and from thence
south 80 east 17 poles to a corner; thence with William Wind-
ley's own line east 129 poles to a corner; thence north 15 west
66 poles to a corner stake in the savannah; thence north 76

NICHOLSON *v.* LUMBER CO.

"A" is the division line of the Alderson quarter land from the River plantation and the Aaron Hammond land.

"B" is the westernmost line of the widow's dower.

west 160 poles to a corner; thence south 10 east 16 poles to said Ash Branch, and then to the beginning, containing 100 acres, more or less, and was patented by William Windley, deceased; to have and to hold to him and his heirs in fee simple forever."

Plaintiff claimed the 100 acres devised in this will to James Windley under a deed from a surviving child and one of the devisees of said James, and defendant claimed under a deed from the said John B. Respess, to whom the said George Respess, codevisee, had conveyed his interest, and which said deed purported to convey the land devised to John B. and George Respess, under said will of Ruel Windley; and on matters relevant to this appeal the issue as to title was made to depend largely on the correct location of this devise of 100 acres to James Windley, defendant alleging that plaintiff had failed to locate the said land at· all, and that any correct location of same, if made, would not include the *locus in quo.* On this question of location there was evidence on part of plaintiff tending to fix the beginning corner of the 100 acres as a certain "oak at or near the head of Ash Branch" as called for in the devise and subsequent deeds, and that the placing as contended for would result in locating this land so as to include the *locus in quo;* and in rebuttal of this testimony, defendant offered, and same was received in evidence over plaintiff's objection, a certificate of survey for a land warrant and grant to Calvin Windley for 200 acres of land in Beaufort County. This certificate, bearing date or purporting to bear date in 1841, contained a plat of land, with the courses and distances, and was signed by Ruel Windley, surveyor, and also the chainbearers, was without erasure or interlineations of any kind, and as we understand the record was the plat and survey accompanying a grant to Calvin Windley, of same date, for a tract of land in that neighborhood of the quantity stated, and was produced from the proper custody. This plat was introduced because it apparently showed a placing of Ash Branch entirely different from that claimed by plaintiff and tending to show that a correct location of the 100 acres would not cover the *locus in quo.* Before the same was admitted, John B. Respess, Jr., a witness for defendant, testified as follows:

"Q. Do you know Ruel Windley's handwriting? A. I know it in this way: he raised my father and was very much devoted to him, and often in looking over his papers, which I have now, my father would show me and say, 'This is grandfather's signa-. ture.'

"Q. Have you seen a great deal of that writing? A. Yes, sir. Since I have been surveying I have seen quite a lot of it. By family reputation, my greatgrandfather was a surveyor, and my father was a surveyor."

A small map, marked "A," was handed to witness, and he was asked:

"Q. Whose handwriting is this, if you know? A. That is Ruel Windley's, from the source of information that I have:

"By the Court: Q. Do you mean to say that somebody told you that that identical paper was in Ruel Windley's own handwriting? A. Not this one.

"By counsel for defendant: Q. From the writing you have seen purporting to have been written by Ruel Windley, is that, or is it not, his handwriting? A. Yes, sir; that is his handwriting."

On these facts and accompanying testimony, we are of opinion that the plat with the certificate was properly received in evidence, being admissible as an ancient document and also by reason of competent testimony tending to show that the certificate just below the plat, and giving the corners of same, was signed or subscribed in the handwriting of Ruel Windley, deceased. It is well established that ancient documents, that is, documents relevant to the inquiry and bearing date or purporting to bear date at or before a period of thirty years prior to the time the same are offered in evidence, prove themselves, that is, they are admissible in evidence without the ordinary requirements as to proof of execution or as to handwriting, the recognized limitation being that they should be produced from proper or a natural custody and be free from suspicious circumstances, indicative of fraud or invalidity. McKelvey on Evidence (2 Ed.), p. 440. These preliminary requirements being for the determination of the court. The principle is stated

in Stevens' Digest of the Law of Evidence, as follows: "Where any document purporting to be thirty years old is produced from any custody which the judge in the particular case considers proper, it is presumed that the signature and every other part of such document which purports to be in the handwriting of any particular person is in that person's handwriting, and, in the case of a document executed or attested, that it was duly executed and attested by the persons by whom it purports to be executed and attested; and the attestation or execution need not be proved, even if the attesting witness is alive and in court. Documents are said to be in proper custody if they are in the place in which, and under the care of the person with whom, they would naturally be, but no custody is improper if it is proved to have had a legitimate origin, or if the circumstances of the particular case are such as to render the origin probable."

This statement, copied with approval in 2 Elliott on Evidence, sec. 431, will be found very generally sustained, and applies, except where modified or restricted by statute, not only to deeds, but to wills, leases, letters, records, contracts, maps, certificates, and all other writings which are relevant to the inquiry and may need authentication. 3 Wigmore, sec. 2145; 2 Elliott, sec. 1333; Starkie on Evidence, sec. 521 *et seq.;* 2 A. and E., p. 322. Where such a document is offered as a muniment of title it was formerly held that it should be fortified by some evidence of possession or occupation, under and consistent with the purport of the instrument, a position referred to as prevailing in *Plummer v. Baskerville,* 36 N. C., p. 252-269; but the view which now more generally obtains does not seem to make this evidence of cotemporaneous or accompanying occupation a necessary requirement to the introduction of the paper, but its presence or absence is a relevant circumstance for the consideration of the jury after the same has been received in evidence, the presumption as to the authenticity of an ancient document being a rebuttable one. McKelvey on Evidence, p. 441; Wigmore on Evidence, sec. 2441; Starkie on Evidence, sec. 524; Wharton Law of Evidence, 1358, 1359.

156—5

Again, as stated, we think the testimony of John B. Respess, concerning the document, would require that the same be received in evidence. While the doctrine of opinion evidence, by what is in strictness termed a comparison of handwriting, as a rule, is only permitted in this State in the case of expert witnesses, and then in a restricted line of cases, as shown in *Tunstall v. Cobb,* 109 N. C., 316; *Yeates v. Yeates,* 76 N. C., 142, a witness, expert or other, who has acquired knowledge and formed an opinion as to the character of a person's handwriting from having, seen such person write or from having, in the ordinary course of business, seen writings purporting to be his and which he has acknowledged or upon which he has acted or been charged, as in the case of business correspondence, etc., may give such opinion in evidence when a relevant circumstance. *Pope v. Askew,* 23 N. C., 16; Stephens on Evidence, 98; Abbott's Trial Evidence, 485-86. And the position excluding proof of handwriting by comparison is now so far relaxed with us that although a jury is not allowed to make comparisons for themselves (*Fuller v. Fox,* 101 N. C., 119), a witness, expert or not, who has been properly allowed to express an opinion as to the handwriting of a given paper, on being shown a writing admitted to be genuine, may "show the two papers to the jury and, by making comparisons between them, explain and point out to the jury the similarity or difference between the two." *Martin v. Knight,* 147 N. C., 564. And the means of acquiring the requisite knowledge to enable one to form and express an opinion as to handwriting has, in case of ancient documents, and of necessity, been extended to include a witness who, in the course of his duty, has had full opportunity and frequent occasion to observe and note the handwriting in other ancient documents entirely free from suspicion, and states that he has thus been enabled to form a satisfactory opinion as to the handwriting of the ancient document in question. 3 Taylor Evidence, Amer. Notes, 1229, 21; Chamberlain Best on Evidence, p. 231; Starkie on Evidence, sec. 521.

Writers on evidence usually refer to such testimony as coming only from expert witnesses, but we doubt if an examination of the decisions would justify the statement. The opinions in

these cases, so far as examined, seem rather to lay stress on the fact as stated, that the witness had charge and custody of numbers of documents, with full opportunity and frequent occasion to examine them, rather than the fact that a witness was in strictness and technically an expert. *The Fitzwalter Peerage case,* 10 C. and F. Rep., p. 193; *Canty v. Platt,* 11 S. C., 260; *Swegart v. Richards,* 8 Pa. State, 436; *Jackson v. Brooks,* 8 Wendell, 426. In this last case the doctrine is stated as follows: "Where witnesses to ancient writings are dead, and such a period of time has elapsed since the execution of the instruments that no person can be presumed to be living who can testify to the handwriting of the parties or witnesses, evidence by a witness verifying the signatures of the parties and witnesses is admissible, although his knowledge of such genuineness is derived solely from an inspection of other ancient writings having the same signatures, which have been treated and preserved as muniments of title to estates." And generally on the question of the admissibility of this evidence, see *Tuttle v. Rainy,* 98 N. C., 513; *Strother v. Lucas,* 31 U. S., 763; *Hogans v. Carruth,* 19 Fla., 84; *Floyd v. Tewksbury,* 129 Mass., 362.

A proper application of these authorities fully supports the ruling of the court in admitting the certificate and plat in question, and, as stated, on both grounds. It was an ancient document, produced from a custody both reasonable and natural and apparently without any fact or suggestion casting doubt or suspicion upon it. (2) The witness John B. Respess fully qualified himself to give an opinion as to the handwriting of Ruel Windley in testifying that he had had occasion and full opportunity to examine and note other ancient documents having Ruel Windley's signature in care and keeping of his father and himself, the son and grandson of Ruel Windley, and to observe and note his signature as surveyor to numerous papers coming under his inspection in the line of his duty.

While we uphold the action of the court on the question suggested, the plaintiff is entitled to a new trial by reason of another exception duly entered, for that the court, over plaintiff's objection, allowed the jury to take this plat and certificate to their room and inspect the same in their deliberations. This is

contrary to our practice and has been condemned in several decisions of the Court. *Williams v. Thomas,* 78 N. C., 47; *Outlaw v. Hurdle,* 46 N. C., 150; *Watson v. Davis,* 52 N. C., 178-81. For this error, as stated, plaintiff is entitled to a new trial, and it is so ordered.

New trial.

CLARK, C. J., did not sit.