STATE OF NORTH CAROLINA v. CALVIN LOUIS BRANNON

No. 7421SC66

(Filed 15 May 1974)

1. Larceny § 7— larceny of dogs — insufficiency of evidence

In a prosecution for larceny of dogs evidence was insufficient to be submitted to the jury with respect to dogs belonging to one Frazier where the evidence tended to show that the dogs were found several days after they were reported stolen in a pen located somewhere between lots owned by defendant's mother and sister, there was no evidence that defendant had control over the premises and therefore was in constructive possession of the dog lot, and defendant could not be placed around the lot within the month preceding the theft.

2. Criminal Law §§ 89, 95— evidence admissible for impeachment only

An out-of-court statement allegedly made by a witness was admissible as a prior inconsistent statement, but it was not admissible as substantive evidence against defendant and could not be considered in ruling on defendant's motion for nonsuit.

3. Larceny § 7— larceny of dogs — sufficiency of evidence

Evidence was sufficient to be submitted to the jury as to the larceny of dogs belonging to one Gunter where the evidence tended to show that one month prior to the theft defendant ran from Gunter's dog pen upon being discovered there, defendant was seen on the morning of the theft within 100 yards of the prosecuting witness's house, and on the day following the theft, a homemade leash which had been on Gunter's dogs when they were stolen was found in defendant's car.

4. Criminal Law § 84; Searches and Seizures § 2— search of vehicle — voir dire held — no findings or conclusions made

Where a lengthy *voir dire* was held to determine admissibility of items seized from defendant's car and there was conflicting evidence

as to whether permission to search was given and whether the objects were in plain view, failure of the trial court to make findings of fact and conclusions of law was error requiring a new trial.

APPEAL by defendant from *Collier, Judge,* 4 June 1973 Session of FORSYTH County Superior Court. Argued in the Court of Appeals 16 January 1974.

The defendant was charged with two separate warrants for the misdemeanor of larceny of dogs. The cases were consolidated for trial. From a jury verdict of guilty as to each charge and from an active sentence pronounced thereon, the defendant appealed.

Hobert Frazier testified that on 11 October 1972, he owned three beagle dogs which he used for rabbit hunting. On the previous night he had fed the dogs in the pen where he kept them. When he came home from work the following day, he discovered that his dogs were missing. He reported the theft to the sheriff's department. On 22 October 1972, he went to Rowan County as a result of a telephone call he received from Deputy Sheriff Weaver, a deputy of Forsyth County. He was taken to the defendant Brannon's home and discovered his dogs in a dog pen near the house where Brannon lived.

George Gunter, also a resident of Forsyth County, testified that on 22 October 1972, he owned one walker dog and his brother owned two black and tan dogs. All three of the dogs were in his possession on the date in question. The dogs were in a dog box on his pickup truck, which was parked in his yard. His brother had come by early on that day and asked him if he wanted to go hunting. All three dogs were placed in the pickup truck, and the men went into the house for 15 to 20 minutes in preparation for the hunt. When they came to the truck, they discovered that the three dogs were missing. Also missing was a homemade leather leash which was on one of the dogs.

George Gunter went with Deputy Weaver to East Spencer in Rowan County. They met with Chief Wilson of the East Spencer Police and went to the defendant's home. They had a warrant for the defendant's arrest for attempting to steal the Gunter dogs on a previous occasion. They arrived at the home of Hattie Brannon about 10:00 p.m. The defendant lived there with his mother, Hattie H. Brannon. The defendant's sister, Mary B. Thompson, lived in the house next door. There was a

dog pen located between the houses of Hattie Brannon and Mary Thompson. The defendant was not home when the group arrived.

There is a sharp conflict in the testimony of the sequence of events following the arrival of Chief Wilson and the others who accompanied him. A motion to suppress evidence was made, and a voir dire was conducted. The State's evidence was to the effect that the defendant was not home but that his mother gave them permission to search the house and premises for the defendant. While Chief Wilson was searching the house, Deputy Sheriff Weaver and George Gunter searched the yard around the house. There was a 1965 Oldsmobile which was known to be the property of the defendant parked in the yard. The two men approached the car and shined the light on the seats. They then proceeded to the rear of the car and noticed that there was a small hole in the trunk where it appeared to have been pried open on a previous occasion. They shined a flashlight into the hole and saw some dog collars and dog leashes in the trunk. Upon seeing these items, they decided that they would procure a search warrant before proceeding further. They reported this fact to Chief Wilson. He went before a magistrate and obtained a search warrant. They returned to the Brannon residence after having received the search warrant and opened the trunk of the car. There, they found about twenty collars and a number of leashes. One of the leashes was the leash which Charles Gunter had made for the Gunter dogs and which was on the dogs and was stolen with them on the morning in question. When Chief Wilson returned with the search warrant, the defendant had already arrived at the scene. He was arrested, and his hands were handcuffed behind his back. Chief Wilson testified that the defendant gave them permission to search the car and that the defendant assisted with the search.

The defendant's mother testified that the police came to the house and asked to see the defendant. Upon being told that he was not there, they rushed into the house and began searching. They also searched the yard and the immediate area surrounding the house. She further testified that she did not give permission to anybody to search anything. Other corroborating evidence to the same effect was given by the defendant's two sisters. In addition, the defendant testified that he did not give anyone permission to search his car or any other place.

Following the voir dire, the motion to suppress was denied. Neither findings of fact nor conclusions of law were entered.

Although the court stated that the search warrant was probably invalid, no ruling was made on the disputed arrest warrant. Neither was any ruling made on the permissiveness of the search.

The State introduced into evidence the leash found in the trunk of defendant's car. It was positively identified as the one stolen with the Gunter dogs. Testimony by the defense tended to show that the dogs were not on the property of Hattie Brannon but were located on the property of Mary Thompson, her daughter. Mary Thompson testified that the pen was leased to Fred Ingram for $80.00 a year and that the dogs in the pen belonged to Fred Ingram. Fred Ingram also testified to the same effect. He stated he had bought the Frazier dogs from a man in a red pickup truck.

In rebuttal, Chief Wilson was recalled to the witness stand. He testified that Hattie Brannon previously told him that the dog pen was under the control of the defendant Calvin Louis Brannon. He further stated that she had told him that Calvin Brannon was the only person who put dogs there, or had anything to do with them, and that he fed the dogs and took care of them in the lot.

*Attorney General Robert Morgan by Richard F. Kane, Associate Attorney General for the State.*

*Blanchard, Tucker, Denson and Cline by Irvin B. Tucker, Jr., for the defendant.*

CARSON, Judge.

[1] The defendant moved for a judgment as of nonsuit as to each count at the end of the State's evidence and again at the end of all the evidence. We hold that the motion as to the charge of larceny of the Frazier dogs should have been allowed. The State contends that the defendant was in constructive possession of the Frazier dogs and that the doctrine of possession of recently stolen property would be sufficient to take the larceny charge to the jury. However, the facts do not support the constructive possession of the dogs by the defendant. The uncontradicted testimony showed that the defendant's mother, Hattie Brannon, owned one of the lots and that the defendant's sister, Mary B. Thompson, owned the other lot. Furthermore, the dog pen was located somewhere between the two lots. In neither event would the lot have been owned or controlled by

the defendant, absent further proof. The only other evidence relating to the defendant's control over the lot was testimony by Chief Wilson that he had seen the defendant approximately one month earlier back by the dog pen "handling a dog through the fence."

To invoke the doctrine of constructive possession, it is necessary that the defendant be shown to have the right of control over the premises in question. If the defendant could and did command the use of the dog lot, it would have been in his constructive possession. *State v. Spencer*, 281 N.C. 121, 187 S.E. 2d 779 (1972); *State v. Meyers*, 190 N.C. 239, 129 S.E. 600 (1925). However, there is no competent subtantive evidence that the defendant did, in fact, have command of the lot. It was not on the defendant's property, and he could not be placed around the lot within the month preceding the theft. At best, the defendant's connection with the lot would be speculation and conjecture. This type of evidence has been held to be insufficient to uphold the doctrine of constructive possession. *State v. Glenn*, 251 N.C. 156, 110 S.E. 2d 791 (1959); *State v. McLamb*, 236 N.C. 287, 72 S.E. 2d 656 (1952).

[2]   The State relies on the out of court statement allegedly made by Hattie Brannon to Chief Wilson. This was introduced by Chief Wilson as a prior inconsistent statement by the witness Hattie Brannon. While the statement was admissible for the specified purpose, it was not substantive evidence against the defendant. *State v. Mack*, 282 N.C. 334, 193 S.E. 2d 71 (1972); *Hubbard v. R. R.*, 203 N.C. 675, 166 S.E. 802 (1932); *State v. Neville*, 51 N.C. 423 (1859); 1 Stansbury's North Carolina Evidence (Brandis Revision, 1973), § 46. Hattie Brannon denied making such a statement and denied its veracity. Thus, it could not be considered on the question of nonsuit.

Considering all the evidence in the light most favorable to the State, we hold that there was insufficient evidence to submit to the jury the charge of larceny of the Frazier dogs. The evidence only gave rise to suspicion or conjecture, and nonsuit should have been allowed.

[3]   The defendant had been seen in the dog pen belonging to George Gunter approximately one month before the theft occurred. Upon being discovered there, he jumped over the fence and ran. The defendant was also seen on the morning of the theft within 100 yards of the prosecuting witness' house in

the same car in which the homemade leash was subsequently discovered. The leash was positively identified as being on the dogs which were stolen. It was found in the defendant's car the following day. There is enough circumstantial evidence to be submitted to the jury on the charge of the larceny of the Gunter dogs if the evidence was admissible.

[4] The defendant strenuously contends that the leash was seized as a result of an unlawful search and was thus inadmissible in evidence. A motion to suppress the evidence was duly made during the trial. A lengthy voir dire was conducted by the trial court. At the end of the voir dire, the court overruled the motion to suppress. The trial court expressed an opinion that the search warrant was unlawful but stated that it did not matter inasmuch as the leash was in plain view.

The items in the trunk of the defendant's car were seen by the Deputy Sheriff of Forsyth County while Chief Wilson was inside searching the house. He could not identify the leashes or collars that he saw but went to get a search warrant upon their discovery. The trial court held that the search warrant was invalid because of technical defects, but was unnecessary inasmuch as the objects were in plain view. Conceding, arguendo, that the items were, in fact, in plain view, there is still an unresolved question as to whether or not Deputy Sheriff Weaver had a right to be searching the defendant's yard and car. The State contends that permission to search was given by the defendant's mother who owned the property. The defendant's mother strongly denies that she gave permission to anybody to search anywhere. Although a lengthy voir dire was held, the trial court did not make any findings of fact or conclusions of law based thereon. We believe that the failure to make the findings of fact and the conclusions of law required in this case was erroneous. *State v. Moore*, 275 N.C. 141, 166 S.E. 2d 53 (1969); *State v. Barnes*, 264 N.C. 517, 142 S.E. 2d 344 (1965). The failure to make such findings and conclusions deprives us of the necessary information needed to adjudicate the legality of the search and the correctness of the ruling of the trial court, making it necessary that a new trial be awarded. As to the charge of larceny of the Frazier dogs, the judgment is reversed. As to the charge of larceny of the Gunter dogs, a new trial must be awarded.

New trial.

Chief Judge BROCK and Judge MORRIS concur.