STATE OF NORTH CAROLINA v. LEONA THOMPSON

No. 8029SC615

(Filed 3 February 1981)

1. Embezzlement § 4— embezzlement by city clerk — conviction under appropriate statute

There was no merit to defendant city clerk's contention that her convictions for embezzlement from the City of Saluda were invalid in that she was convicted for violations of G.S. 14-90, which is a private sector embezzlement statute, when she should have been tried for violations of G.S. 14-92, a statute applicable to public officials, since the indictments against defendant did not refer specifically to any statute, they were sufficient to charge defendant with violations of either G.S. 14-90 or G.S. 14-92, and the sentence imposed for each offense of which defendant was convicted was within the maximum permissible under either statute.

2. Embezzlement § 6— fraudulent intent — inference from evidence

Evidence that defendant city clerk wrote salary checks to herself in excess of the amount authorized was sufficient to permit a reasonable inference that defendant fraudulently or knowingly and willfully misapplied the city's funds to her own use without authorization so as to support her conviction of embezzlement.

3. Embezzlement § 6.1— reference in instructions to crime of larceny

The trial court in an embezzlement case did not err in referring in the instructions to the crime of larceny where the court was simply explaining the crime of embezzlement by contrasting it with the crime of larceny.

4. Criminal Law § 118.1— statement of contentions of the parties — equal stress

The trial court in an embezzlement case did not improperly fail to give equal stress to the contentions of the State and of the defendant by taking more time in stating the State's contentions than in stating those of defendant where the sole evidence offered by defendant was character evidence, the State introduced a considerably greater volume of testimony than did the defendant, and the contentions of the defendant were therefore very few in contrast with those of the State.

5. Criminal Law § 117— instructions — effect of character evidence — necessity for request

Since character evidence is a subordinate feature of the case, failure of the court to give an instruction as to how the jury should view character evidence is not error absent a request for such an instruction.

6. Embezzlement § 4— embezzlement indictments — failure to allege specific dates of offenses

Indictments for embezzlement were not invalid because they failed to allege the specific dates on which the offenses occurred but instead alleged that they occurred on or about 1 January of each year for which an indictment was returned since defendant presented no statute of limitations or alibi defense, and

the time of the offenses was therefore not an essential fact. Furthermore, defendant was not prejudiced by the issuance of one indictment for each year rather than separate indictments for each offense committed during that year.

**7. Criminal Law § 58— defendant's signature on checks — competency of witness**

The trial court in an embezzlement case properly allowed a State's witness to testify that the signature on checks introduced as State's exhibits was that of defendant where the witness testified that he had seen defendant write her signature on thousands of occasions.

**8. Criminal Law § 153— motion for appropriate relief after notice of appeal — jurisdiction**

Defendant's motion for appropriate relief pursuant to G.S. 15A-1418 should have been filed initially in the Court of Appeals rather than in the trial court where it was filed after defendant had given notice of appeal.

**9. Criminal Law § 138— sentences within statutory maximum**

Sentences imposed on defendant upon her conviction of four offenses of felonious embezzlement were within the discretion of the trial court and not excessive where each sentence was less than the statutory limit of 10 years provided by G.S. 14-2.

APPEAL by defendant from *Howell, Judge.* Judgment entered 25 January 1980 in Superior Court, POLK County. Heard in the Court of Appeals 6 November 1980.

Defendant was charged in four bills of indictment with embezzlement of funds from the city of Saluda, in each of the years 1975, 1976, 1977 and 1978. Upon her pleas of not guilty, the State presented evidence tending to show the following:

Defendant was employed as City Clerk by the city of Saluda. Her duties included receiving and collecting municipal funds. All funds of the municipality were administered under her supervision, and she "typed out and signed all the checks." For her services defendant was paid a weekly salary set by the Saluda City Council, and she "was not authorized to take any money from the City ... in excess of her salary."

Shortly after the State's witness, Cater Leland, became Mayor of Saluda, the city hired a "relief worker" while defendant was on vacation. During this time Leland "noticed some ... irregularities in the records." He thereupon called in an accountant for a special audit. The accountant who performed the audit, Larry Bonds, testified that he had made a determination "from city records and from

the Mayor [of] what the normal salary payments to the Clerk should have been" and the salary payments which were in fact "made to the Clerk [and] charged to the general ledger accounts." His determination covering the years 1975-1978 was as follows:

|  | Authorized Salary | Salary Actually Paid | Overpayment |
|---|---|---|---|
| 1975 | $5,304.00 | $5,708.00 | $ 404.00 |
| 1976 | 5,021.10 | 5,300.90 | 279.80 |
| 1977 | 6,292.00 | 8,228.00 | 1,936.00 |
| 1978 | 4,324.32 | 5,634.72 | 1,310.40 |
|  | | TOTAL OVERPAYMENT | $3,930.20 |

The payroll checks payable to defendant during the period 1 July 1974 through 9 February 1978, bearing her signature for the city of Saluda as payor, and which had all been cancelled, were introduced as exhibits by the State.

Defendant's evidence consisted solely of witnesses to her good character and reputation in the community.

The jury returned verdicts of guilty as charged. Judgments of imprisonment were entered thereon, sentencing defendant to "not less than 4 nor more than 7 years" in Case No. 78CRS2171; to "a period of two years" in Case No. 78CRS2172, to run concurrently with the sentence imposed in Case No. 78CRS2171; to "a period of no less than two years nor more than 2 years" in Case No. 78CRS2173, to run concurrently with the sentence imposed in Case No. 78CRS2171; and to "no less than two years nor more than two years" in Case No. 80CRS238, to run concurrently with the sentence imposed in Case No. 78CRS2171. From these judgments of imprisonment, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Alfred N. Salley, for the State.*

*The Crosby Law Firm, by Christopher S. Crosby, for defendant-appellant.*

WHICHARD, Judge.

[1]  Defendant first contends in her brief that her convictions are "void for fatal variance" in that she was tried and convicted for

violations of G.S. 14-90, which is "a private sector embezzlement statute," when she should have been tried for violations of G.S. 14-92, a statute "applicable to public officials." The indictments against defendant do not refer specifically to any statute, and they are sufficient to charge defendant with violations of either G.S. 14-90 or G.S. 14-92. Both statutes create a felony offense, and the sentence imposed for each offense of which defendant was convicted was within the maximum permissible under either statute. We thus find this contention to be without merit.

[2]  As part of the argument under this heading in her brief defendant also contends the State has not met its burden of proof, because it has not produced any evidence of defendant's intent at the time she wrote checks to herself in excess of the amount authorized. It is true that "the criminality of the act depends upon the intent," and therefore the State must "show the intent to defraud beyond a reasonable doubt." *State v. McLean*, 209 N.C. 38, 40, 182 S.E. 700, 701-702 (1935). It is also true, however, that the intent to defraud "may be shown by direct evidence, or by evidence of facts and circumstances from which it may reasonably be inferred." *McLean*, 209 N.C. at 40, 182 S.E. at 702. We find the evidence sufficient to permit a reasonable inference that defendant fraudulently or knowingly and willfully misapplied the city's funds to her own use without authorization. Further, the court carefully instructed the jury that "the property must have been appropriated with a fraudulent purpose"; that "[t]he conversion of funds or property by a person who has been entrusted with them becomes criminal as an embezzlement only by reason of this corrupt intent and it is necessary for the State to establish the intent as a fact independent of the conversion"; and that "this intent must be found by a Jury as a fact from the evidence." This argument is without merit.

[3]  Defendant next contends the trial court erred in its instructions to the jury by (1) making reference to the crime of larceny, when defendant was not charged with larceny; (2) not properly summarizing the case and not summarizing the contentions of the parties with equal force; and (3) failing to instruct sufficiently as to how the jury should view character evidence.

As to the contention regarding reference to the crime of larceny, the instruction complained of was as follows:

The object of the statute is to punish the misappropria-

> tion of property rightfully in the possession of the alleged
> wrongdoer who though civilly liable for a conversion
> could not be convicted of larceny, because there was no
> taking from the owner's possession by an act of trespass.
> The difference, therefore, between larceny and embez-
> zlement is that in larceny there must be trespass while in
> embezzlement it is not necessary. Both offenses, the act of
> taking or converting, must be done with a fraudulent
> intent.

It is evident that the trial court was simply explaining the crime of
embezzlement by contrasting it with the crime of larceny. Nothing
in this instruction in any way suggests that the defendant could
have been guilty of the crime of larceny, and we find in the instruc-
tion no error prejudicial to defendant.

**[4]** As to the contentions regarding summarizing the case and
contentions, G.S. 15A-1232, like former G.S. 1-180 (now repealed),
does not require the trial court to state the contentions of the liti-
gants; but if the court does so, it must give equal stress to the State
and the defendant, and must state the pertinent contentions of both
parties. *State v. Hewett*, 295 N.C. 640, 247 S.E.2d 886 (1978). Defend-
ant may not object, however, if the court takes more time in stating
the State's contentions than in stating the defendant's, *State v.
Sparrow*, 244 N.C. 81, 92 S.E.2d 448 (1956); and the equal stress
required "does not mean that the statement of contentions of the
State and of the defendant must be equal in length," *State v. King*,
256 N.C. 236, 239, 123 S.E.2d 486, 489 (1962). "[I]n a trial where the
evidence for the defendant is short . . . his contentions will naturally
be very few in contrast with those of the State [which] may have
introduced a great volume of testimony." *King*, 256 N.C. at 239, 123
S.E.2d at 489. Here, the sole evidence offered by defendant was
character evidence; and the court adequately instructed the jury
that the defendant had offered evidence which she contended
tended to show that "according to the opinion of several people who
have known her over a period of years, she has a good character and
reputation in the community where she lives." The State introduced
a considerably "greater volume of testimony" than did the defend-
ant, and the contentions of the defendant were therefore naturally
"very few in contrast with those of the State." There is no merit in
defendant's contention in this regard.

**[5]** As to the contention regarding the failure to instruct suffi-

ciently as to how the jury should view character evidence, the character of defendant was not a substantive feature of the case. "[I]nstructions as to the significance of evidence which do not relate to the elements of the crime itself or defendant's criminal responsibility therefor have been considered subordinate features of the case." *State v. Hunt*, 283 N.C. 617, 624, 197 S.E.2d 513, 518 (1973). "Evidence of the good character of the defendant . . . is a subordinate and not a substantive feature of the trial and the failure of the judge to charge the jury relative thereto will not generally be held for reversible error unless there be a request for such instruction." *State v. Sims*, 213 N.C. 590, 594, 197 S.E. 176, 178 (1938). No such special request was made here. This contention, too, therefore lacks merit.

**[6]** Defendant next contends she was "tried with deficient indictments." She argues that: (1) the indictments failed to state an exact amount of money allegedly embezzled; (2) they failed to allege to whom the money belonged; and (3) they failed to allege the specific dates on which the offenses occurred, charging "that the violations occurred on or about 1 January of each year." Our examination of the indictments reveals that each does allege an exact amount of money entrusted to and embezzled by the defendant, and we find the evidence sufficient to sustain convictions for embezzlement of some portion or all of the sums alleged in the indictments. It also reveals that each indictment sufficiently alleges that the sums were held by defendant for or on account of the city of Saluda. Finally, it reveals that defendant correctly asserts that the indictments do not allege specific dates on which the offenses occurred, alleging instead that they occurred on or about 1 January of each year. "The time fixed in a bill of indictment usually is not an essential fact, and the State may prove the crime was committed on another date." *State v. Vincent*, 35 N.C. App. 369, 371, 241 S.E.2d 390, 392 (1978). Because defendant presented no statute of limitations or alibi defense, the time of the offenses here was was "not an essential fact." Moreover, because the State could have obtained a separate indictment for each check drawn by defendant in excess of the authorized amount, the issuance of one indictment for each year rather than for each offense benefited defendant and could not have prejudiced her. This assignment of error is overruled.

**[7]** Defendant next contends that the trial court erred in numerous evidentiary rulings. She argues at greatest length the impropri-

ety of allowing the State's witness, Cater Leland, to testify that the signature on the checks introduced as State's exhibits was that of defendant. The basis of her argument is that there was no evidence as to how he came to know defendant's handwriting or as to the basis for his observation that it was hers. We find, however, that the witness had testified that he had seen defendant write her signature and had seen defendant's signature on "thousands" of occasions. Thus, he was competent to testify as to his opinion that the signature on the checks was that of defendant.

> [A] witness, expert or other, who has acquired knowledge and formed an opinion as to the character of a person's handwriting from having seen such person write or having, in the ordinary course of business, seen writings purporting to be his and which he has acknowledged or upon which he has acted or been charged . . . may give such opinion in evidence.

*Nicholson v. Lumber Co.*, 156 N.C. 59, 65, 72 S.E. 86, 87 (1911); 2 Stansbury's North Carolina Evidence § 197 at 122 (Brandis Revision 1973). This contention is without merit; and we find no error prejudicial to defendant in her remaining contentions relating to evidentiary rulings. This assignment of error is therefore overruled.

**[8]** Defendant also moves for appropriate relief pursuant to G.S. 15A-1418. We note that defendant filed this motion for appropriate relief, or a copy thereof, in the Superior Court on 5 June 1980. The trial judge entered an order filed 8 July 1980 denying the motion. This order was entered long after defendant had given notice of appeal, and the trial court thus had been divested of jurisdiction to pass on the motion. G.S. 15A-1448. The motion should have filed initially in the Court of Appeals. Ultimately it was filed with this Court as part of the record on appeal. Despite procedural error in the filing of the motion, we have considered it; and because we, like the trial court, find it without merit, it is hereby denied.

**[9]** Finally, defendant assigns error to the sentences entered, contending that they were excessive; that the trial court did not address the American Bar Association's Standards Relating to Sentencing Alternatives and Procedures; and that the sentences were violative of the Constitution of the United States and of the Constitution of the State of North Carolina. "The punishment imposed in a

particular case, if within statutory limits, is within the sound dis-
cretion of the presiding judge." *State v. Garris*, 265 N.C. 711, 712,
144 S.E.2d 901, 902 (1965). The sentence of imprisonment imposed
in each case here was less than the statutory limit of ten years. G.S.
14-2. Hence, it was within the sound discretion of the presiding
judge; and "[w]hether defendant should be granted relief by way of
reduction of the sentences is a matter for decision by the Board of
Paroles [now the Parole Commission]." *State v. Gibbs*, 266 N.C. 647,
648, 146 S.E.2d 676, 677 (1966).

Counsel for defendant conceded in oral argument that none of
the errors alleged, standing alone, were prejudicial; but he con-
tended that their cumulative effect denied defendant a fair trial.
We conclude from our examination of the record, the errors
assigned and the contentions of counsel, that defendant had a fair
trial free from prejudicial error.

No error.

Judges HEDRICK and CLARK concur.