STATE OF NORTH CAROLINA v. JAMES STANLEY

No. 8422SC430

(Filed 16 April 1985)

**1. Rape and Allied Offenses § 5— second-degree rape—sufficiency of evidence**

*Defendant's motions to dismiss charges of second-degree rape were prop-erly denied where the State presented evidence that tended to show that defendant told the victim to go home with him when they would be alone in the house, picked her up and carried her into the children's bedroom against her will while she was fighting him, held her so tightly he left a large bruise on her upper arm, took off her clothes, had sexual intercourse with her, dragged her into her bedroom and had sexual intercourse a second time, and warned her not to tell anybody. G.S. 14-27.3.*

**2. Criminal Law § 181— second-degree rape—motion for appropriate relief based on contradictions in evidence**

*Defendant's motion for appropriate relief to set aside a verdict of second-degree rape because of inconsistencies and contradictions in the evidence was properly denied. Contradictions and inconsistencies in the evidence are mat-ters for the jury, and there was clearly sufficient evidence to warrant the sub-mission of the case to the jury. G.S. 15A-1414(b)(2).*

State v. Stanley

3. **Criminal Law § 138— second-degree rape—aggravating factors—victim mentally infirm—defendant abused position of trust**

Where defendant was convicted of second-degree rape, the trial court properly found as aggravating factors that the victim was mentally infirm and that defendant took advantage of a position of trust or confidence to commit the offense where it was uncontradicted that the victim was a nineteen-year-old mentally retarded girl who was a client at the Davidson County Sheltered Workshop for the Retarded, who had been asked by defendant's wife to stay with them to help with housework, and who testified that she considered defendant a parent or authority figure.

4. **Criminal Law § 131.1— second-degree rape—motion for new trial for newly discovered evidence denied**

In a prosecution for second-degree rape in which defendant testified that the victim made advances to him, there was no error in the denial of defendant's motion for a new trial for newly discovered evidence where a man who had testified at trial that he had gone to a movie with the victim testified that after the movie they had gone to defendant's house where the victim had unbuttoned three buttons of her blouse and asked him to touch various parts of her body. The testimony was not relevant under G.S. 8-58.6(b)(3) because it did not closely resemble defendant's version of the alleged encounter; furthermore, defendant did not show due diligence in that he had the opportunity to question the witness at trial. G.S. 15A-1415(b)(6).

5. **Criminal Law § 89.4— cross-examination concerning testimony of probable cause hearing—properly limited**

In a prosecution for second-degree rape, the court did not abuse its discretion by sustaining the State's objection to defendant reading from the probable cause hearing transcript after the victim started to cry during cross-examination. The transcript was admitted into evidence at the close of defendant's evidence with a proper limiting instruction.

6. **Rape and Allied Offenses § 6— instructions that general reputation of victim should be considered on consent not given—no error**

In a prosecution for second-degree rape, the court did not err by not instructing the jury that the general reputation and character of the prosecutrix should be considered regarding her consent to sexual intercourse with defendant where defendant did not request such an instruction at trial and the evidence which defendant contended was character evidence was ambiguous.

7. **Criminal Law § 89.1— second-degree rape—victim's reputation for truth and veracity—questions limited to general reputation**

In a prosecution for second-degree rape, the court did not err by not permitting defendant to ask about the victim's reputation for truth and veracity. The established rule in North Carolina permits the impeaching character witness to be asked only whether the witness knows the general reputation and character of the party and what that general reputation or character is. The witness may amplify or qualify the answer to the latter question with regard to specific virtues or vices but counsel offering the witness may not suggest that the witness do so.

**8. Criminal Law § 86.2— error to exclude defendant's testimony of prior convictions—not sufficient prejudice for a new trial**

In a prosecution for second-degree rape, the court erred by not permitting defendant to testify on direct examination about his prior convictions, but that error alone was not enough to warrant reversal.

APPEAL by defendant from *DeRamus, Judge.* Judgment entered 28 November 1983 in Superior Court, DAVIDSON County. Heard in the Court of Appeals 17 January 1985.

Defendant was charged on an indictment, proper in form, with the second degree rape of Mildred Ann Pyburn. At trial the State's evidence tended to show the following. On 22 June 1983 Mildred Ann Pyburn (Ann) was living with defendant, his wife, and their two children. Ann was nineteen years old. She was staying with the Stanleys to help Mrs. Stanley with housework. On the morning of 22 June 1983 Ann woke up early and went with defendant and his family to visit defendant's grandmother. Later that day defendant asked Ann to return to his house with him to do some housework for his wife. When they got back to the house, defendant started talking to Ann about sex. Ann was scared. Defendant picked her up and took her into the children's bedroom. Ann struggled and fought with defendant. In the children's bedroom defendant undressed Ann and himself and forced Ann to have sexual intercourse. Then defendant made Ann have sexual intercourse with him again in her own bedroom. Defendant held Ann's arm so tightly he gave her a three-inch bruise. Defendant warned Ann not to tell anybody about what happened. Later, defendant and Ann picked up defendant's friend, Buck, and took him to work. Then defendant took Ann to Sky City, picked up his wife and children, and took Ann to the Boy's Group Home. At the Home Ann told Frankie Lane, a woman she knew from the Davidson County Sheltered Workshop for the Retarded, about the rape. Ann went to the Sheriff's Department and to the hospital.

On cross-examination Ann said she used to be a client at the Davidson County Sheltered Workshop for the Retarded. Ann had a friend named Jimmy Hayes who lived in the Boy's Group Home. She had been to see Jimmy a few days before the rape occurred; she was angry with him for dating another girl. The night before the rape Ann called defendant into her bedroom because she thought she saw a lizard on the wall. She waited out in the hall while defendant was in her bedroom.

Dr. James F. Black testified that he examined Ann on 22 June 1983, and in his opinion she had engaged in sexual intercourse within the past twenty-four hours.

Detective Richard Sink, from the Davidson County Sheriff's Department, testified that he spoke with Ann on 22 June 1983. Ann made a statement about the events that took place on that day. In her statement she said defendant had intercourse with her once. Ann returned to Sink's office the following day and when she went into further details about the incident, she said there had been two acts of intercourse.

Frankie Lane, an employee of the Davidson County Sheltered Workshop for the Retarded and the Boy's Group Home, testified that on 22 June 1983 Ann did not seem upset when she came by the Group Home, but forty-five minutes later she started crying and said defendant had raped her.

Defendant testified in his own behalf as follows. Ann moved into his house on 17 June 1983. On the 21st of June he took Ann to the Boy's Group Home to visit for an hour. When Ann returned, she "went berserk" and ran out into the shed. Defendant tried to get her to go into the house, but Ann wanted to sit in the shed and talk to him about Jimmy. Ann was upset that Jimmy was dating another girl. After supper while defendant, his wife, and Ann were playing cards, Ann was still upset about Jimmy; she said that, "she ought to go out and get on somebody." A few minutes after they all went to bed, Ann called defendant into her bedroom and "she was upset about Jimmy again, [and] mentioned sex." The next morning he woke up at seven and when he went into Ann's bedroom to wake her up, "she mentioned again having sex; I told her again about getting in trouble with Betty . . . she said wait; I looked back, she pulled off the sheet, she didn't have nothing on; we had sex." After breakfast the Stanleys and Ann went to visit defendant's grandmother. At 11:30 a.m. defendant left with Ann, and they took Buck to work. Then defendant dropped Ann off at Sky City. Defendant denied raping Ann.

Defendant was found guilty of second degree rape. The trial judge found the following statutory aggravating factors:

The victim was mentally infirm.

The defendant took advantage of a position of trust or confidence to commit the offense.

The defendant has a prior conviction or convictions for criminal offenses punishable by more than 60 days' confinement.

The trial judge found the following non-statutory mitigating factors:

Defendant has been helpful in past to family members and others.

Defendant had voluntarily come forward to the U. S. Attorney and advised that he was on escape while the escape was not suspected by the U. S. Attorney.

Defendant has completed only the 8th grade and was employed at the Sheltered Workshop program similar to the Sheltered Workshop program participated in by the victim.

The trial judge found the factors in aggravation outweighed the factors in mitigation. From a judgment imposing a prison sentence of twenty-four years defendant appeals.

*Attorney General Edmisten by Assistant Attorney General Wilson Hayman for the State.*

*Stoner, Bowers and Gray, P.A. by Carl W. Gray for defendant appellant.*

PARKER, Judge.

[1]  In his first two assignments of error defendant contends the trial court erred in denying his motions to dismiss at the close of the State's evidence and at the close of all the evidence. When defendant elected to offer evidence after the denial of his motion to dismiss, he waived his motion to dismiss at the close of the State's evidence. *State v. Calloway,* 305 N.C. 747, 291 S.E. 2d 622 (1982); G.S. 15-173. We will, therefore, only consider his motion to dismiss at the close of all the evidence. Upon defendant's motion to dismiss, all the evidence favorable to the State must be considered, such evidence must be deemed true and considered in the light most favorable to the State, and the State is entitled to every inference of fact which may be reasonably deduced therefrom. *State v. Dover,* 308 N.C. 372, 302 S.E. 2d 232 (1983).

Defendant argues there was no evidence he used force to overcome Ann's resistance. G.S. 14-27.3 provides:

a) A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person:

(1) By force and against the will of the other person . . . .

The force required for second degree rape need not be actual physical force; constructive force, or female submission under fear or duress is sufficient. *State v. Dull*, 289 N.C. 55, 220 S.E. 2d 344 (1975), *death sentence vacated*, 428 U.S. 904, 96 S.Ct. 3211, 49 L.Ed. 2d 1211 (1976). The State presented evidence, which tended to show defendant told Ann to go home with him when they would be alone in the house, picked her up and carried her into the children's bedroom against her will while she was fighting him, held her so tightly he left a large bruise on her upper arm, took off her clothes, had sexual intercourse with her, dragged her into her bedroom and had sexual intercourse a second time, and warned her not to tell anybody. Clearly this evidence, viewed in the light most favorable to the State, was sufficient to withstand defendant's motion to dismiss.

[2] Defendant next assigns error to the trial court's denial of his motion for appropriate relief, pursuant to G.S. 15A-1414(b)(2), to set aside the verdict as contrary to the weight of the evidence. Defendant argues that inconsistencies and contradictions in the evidence required the trial judge to grant his motion. A motion under G.S. 15A-1414(b)(2) is addressed to the discretion of the trial court, and the ruling will not be disturbed on appeal absent an abuse of discretion. *State v. Batts*, 303 N.C. 155, 277 S.E. 2d 385 (1981). Any contradictions and discrepancies in the evidence are matters for the jury. *State v. Smith*, 291 N.C. 505, 231 S.E. 2d 663 (1977). We find no abuse of discretion here, since there clearly was sufficient evidence to warrant submission of the case to the jury and to support the verdict. This assignment is without merit.

[3] In his fourth assignment of error defendant argues that two of the aggravating factors found by the trial court were not supported by the preponderance of the evidence: "[t]he victim was mentally infirm," and "[t]he defendant took advantage of a position of trust or confidence to commit the offense." We do not agree. It was uncontradicted that Ann was a client at the David-

son County Sheltered Workshop for the Retarded, which supports the trial judge's finding that she was mentally infirm. It was undisputed that Ann, a nineteen year old mentally retarded girl, was asked by defendant's wife to stay with them to help with housework. Ann said she trusted and obeyed defendant. Her testimony indicates that she considered defendant, who was sixteen years older than she, a parent or authority figure. As our Supreme Court observed in *State v. Ahearn*, 307 N.C. 584, 596, 300 S.E. 2d 689, 697 (1983), "The trial judge should be permitted wide latitude in arriving at the truth as to the existence of aggravating and mitigating circumstances, for it is only he who observes the demeanor of the witnesses and hears the testimony." We conclude, therefore, that this assignment of error is without merit.

[4] In his fifth assignment of error defendant contends the trial court erred in failing to grant him a new trial for newly discovered evidence. After the verdict and judgment were entered, defendant filed a motion for appropriate relief pursuant to G.S. 15A-1415(b)(6) on the grounds of newly discovered evidence. He presented testimony by Jimmy Hayes, who had testified at trial, that Jimmy and Ann had gone to a movie. Afterwards they went back to defendant's house where Ann unbuttoned three buttons of her blouse and asked Jimmy to touch various parts of her body. Jimmy refused to touch her. Jimmy said they never had sexual intercourse.

A motion for a new trial on the grounds of newly discovered evidence is addressed to the sound discretion of the trial judge and is not subject to review absent a showing of abuse of discretion. *State v. Britt*, 285 N.C. 256, 204 S.E. 2d 817 (1974). Here we find no abuse of discretion for the following reasons. For a new trial to be granted on the grounds of newly discovered evidence, it must appear by affidavit that the newly discovered evidence is probably true; the evidence is material, competent, and relevant; due diligence was used to procure the testimony at trial; the evidence is not merely cumulative or corroborative; the evidence does not merely tend to impeach or contradict the testimony of a former witness; and the evidence is of such a nature that a different result will probably be reached at a new trial. *State v. Person*, 298 N.C. 765, 259 S.E. 2d 867 (1979).

State v. Stanley

We do not find Jimmy Hayes' testimony satisfies this test because his testimony is not relevant under G.S. 8-58.6(b) which provides that the sexual behavior, other than the sexual act at issue, of the victim in a rape or sex offense case is irrelevant to any issue in the prosecution. This statute was designed to protect the witness from humiliation and embarrassment, while shielding the jury from unwanted prejudice that might result from evidence of sexual activity which has little relevance to the case and a low probative value. *State v. Younger*, 306 N.C. 692, 295 S.E. 2d 453 (1982). Evidence of the victim's sexual behavior can, however, be relevant under four circumstances. One of these circumstances, as provided in G.S. 8-58.6(b)(3), is when the evidence is "of a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to prove that such complainant consented to the act or acts charged or behaved in such a manner as to lead the defendant reasonably to believe that the complainant consented."

Defendant argues that Ann's behavior with Jimmy was so similar to his version of their sexual encounter as to render Jimmy's testimony relevant under G.S. 8-58.6(b)(3). His version of the incident is, in summary, that he went into Ann's room the morning of 22 June 1983 to wake her up, she mentioned having sex, she pulled off her sheet, she was naked, and they had sexual intercourse. We do not find that Jimmy's testimony closely resembles defendant's version of the alleged encounter; therefore, it does not tend to prove that Ann consented to the alleged rape that took place during the afternoon of 22 June 1983. Jimmy's testimony is irrelevant under G.S. 8-58.6(b). Furthermore, we note that defendant had not shown due diligence in trying to obtain the evidence at trial. When Jimmy testified at trial that he had gone to a movie with Ann, defendant had the opportunity to question him about the date.

[5] Defendant's sixth assignment of error is that the trial court erred in refusing to allow defendant to cross-examine Ann on her testimony from the probable cause hearing. Evidence of a witness' prior inconsistent statement is admissible only to determine the witness' credibility. *State v. Brannon*, 21 N.C. App. 464, 204 S.E. 2d 895 (1974). *See* 1 Brandis on North Carolina Evidence § 46 (2d ed. 1982). Ann started to cry when defendant cross-examined her on her testimony from the probable cause hearing. At this

point the trial judge exercised his discretion and sustained the State's objection to defendant's reading from the probable cause hearing transcript. The transcript was admitted into evidence at the close of defendant's evidence, with a proper limiting instruction. We do not find prejudicial error.

[6] In his seventh assignment of error defendant contends the trial court erred by not instructing the jury that evidence of the general reputation and character of the prosecutrix, if accepted as true, should be considered regarding the question of her consent to sexual intercourse with defendant. At trial defendant did not request such instruction. Character evidence is a subordinate feature of the case, and failure of the court to instruct the jury on character evidence is not error absent a request for such instruction. *State v. Thompson*, 50 N.C. App. 484, 274 S.E. 2d 381, *review denied*, 302 N.C. 633, 280 S.E. 2d 448 (1981). Moreover, the evidence which defendant contends is character evidence is ambiguous:

> Q: Based upon your observations and associations with Ann during the period of time you have known her, what is her general character and reputation?

> A: [Frankie Lane] We always kept her under close supervision at the workshop at lunchtime and break area around the boys.

This could mean either that Ann tended to flirt with the boys, or that the boys were unruly and bothered Ann. We find the court fairly instructed the jury as to the credibility of defendant and the prosecutrix, and instructed the jury on both the corroborative and inconsistent statements made by Ann. Defendant's assignment of error is without merit.

[7] Defendant's eighth assignment of error is that the trial court erred by sustaining the State's objection to the following question:

> Q: Based on your observations and association with Ann during the period of time you have known her, what is her reputation for truth and veracity?

> Objection.

> Sustained.

As this court explained in *State v. Spicer*, 50 N.C. App. 214, 273 S.E. 2d 521, *appeal dismissed*, 302 N.C. 401, 279 S.E. 2d 356 (1981), the established rule in North Carolina permits only the following two questions to be asked of the impeaching character witness: (i) whether the witness knows the general reputation and character of the party, and (ii) what the general reputation or character is. "The witness may amplify or qualify his answers to the latter question with regard to specific virtues or vices of the party but counsel offering the witness may not suggest that the witness do so." *State v. Spicer*, 50 N.C. App. at 219, 273 S.E. 2d at 525. In *Spicer*, counsel for the defendant asked the witness: "[W]hat's the general reputation of Henry Minton as to his truth and honesty?" The State's objection was sustained. The Court then allowed defendant's counsel to ask the witness the following proper questions: "[D]o you know the general reputation and character of Henry Minton here in the community in which he lives?" A: "Yes, I do." Q: "And what is that?" In the instant case, if counsel for the defendant had rephrased his question, as was done in *Spicer*, the question would have been proper. Defendant's assignment of error is without merit.

[8] Defendant's ninth assignment of error is that the trial court erred by failing to allow him to testify on direct examination as to his prior criminal convictions. Defendant's counsel asked him, on direct examination, "Now, what have you been tried and convicted of?" The State objected on the grounds that counsel for defendant was impeaching his own witness. The objection was sustained. In *State v. Hedgepeth*, 66 N.C. App. 390, 310 S.E. 2d 920 (1984), this court observed that when a defendant is not permitted to testify on direct examination regarding his prior criminal record and the prior record is elicited on cross-examination, the defendant sustains a double blow to his credibility. In addition to the obvious effect of the prior conviction, the jury is left with the impression that the defendant tried to hide his criminal record and was not being entirely truthful. This court held that defendant's counsel should have been allowed to question defendant as to his prior criminal convictions as this might have bolstered his credibility. Although we agree with defendant that the trial court erred in prohibiting his testimony on direct examination as to his prior convictions, we find this error alone does not warrant reversal. To warrant reversal defendant must

show positive and tangible error that has substantially affected his rights, and that a different result would have likely ensued. *State v. Billups*, 301 N.C. 607, 272 S.E. 2d 842 (1981); G.S. 15A-1443(a).

We have carefully considered all assignments of error brought forward and find defendant received a trial free from prejudicial error.

No error.

Chief Judge HEDRICK and Judge WHICHARD concur.