STATE OF NORTH CAROLINA v. LAVERNE McNEIL SINCLAIR

No. 797SC809

(Filed 18 March 1980)

1. **Forgery § 2.2; Criminal Law § 89.9— signing grandmother's name to savings account withdrawal slip—grandmother's prior inconsistent statement—insufficient evidence of forgery**

Evidence that defendant withdrew funds from two savings accounts at a bank, that she signed her grandmother's name to the withdrawal slips, that the accounts were listed in the names of her grandparents, and that her grandmother was not aware at the time that defendant was withdrawing the funds

was insufficient to be submitted to the jury in a prosecution for forgery of withdrawal slips and uttering forged withdrawal slips, since affidavits by defendant's grandmother that "she never signed or authorized any other person to sign her name on said check . . ." were competent only for impeaching the grandmother's credibility; the grandmother repeatedly insisted at trial that she had given such authority to defendant; and once the affidavits were removed from consideration as substantive evidence, the State was left with no evidence to rebut the presumption that defendant possessed authority to sign the withdrawal slips in her grandmother's name.

2. **Criminal Law § 25.2— plea of no contest—motion to withdraw—no evidentiary hearing required**

   The trial court did not err in denying defendant's motion to withdraw her plea of no contest to eight counts of forgery and eight counts of uttering made before entry of judgment on the plea, since defendant was not entitled to a hearing to determine if there was a factual basis for allowing the motion, as defendant raised no question of fact.

   Judge CLARK dissenting.

APPEAL by defendant from *Brown, Judge*. Judgment entered 10 April 1979 in Superior Court, EDGECOMBE County. Heard in the Court of Appeals on 29 January 1980.

In 14 bills of indictment proper in form, defendant was charged with 14 counts of forgery of savings account withdrawal slips and 14 counts of uttering the forged slips, in violation of G.S. §§ 14-119 and 14-120. Motion of the State to consolidate six of the cases for trial was allowed and, as to the charges of forgery and uttering in those cases, the State produced evidence tending to show the following:

Janet Pittman, a teller at Peoples Bank and Trust Company in Rocky Mount, described six occasions between 8 September and 6 October 1978 on which defendant came to the bank and filled out savings withdrawal slips for varying amounts of money on two accounts listed in the names of R. L. Alston or Alice Alston. On the first occasion, Pittman asked defendant for some identification, and defendant told her "that one of the other tellers in the bank knew her and after making an inquiry with the other teller", Pittman honored the withdrawal slip which defendant tore from a savings passbook she had brought to the bank and filled out at Pittman's window. She testified that defendant brought a passbook with her on three of the six occasions although it was not necessary to bring the book in order to make

a withdrawal. Defendant signed all the withdrawal slips as Alice Alston.

Mrs. Alston was called by the State and testified that she was the defendant's grandmother. She stated that she and her husband had opened two savings accounts at Peoples Bank and Trust in 1967; that the accounts had been opened for the defendant's use, "to be used as she needed it"; and that she had given the defendant permission to withdraw money from the accounts "whenever she needed money". Defendant had made one withdrawal sometime prior to the dates in question to help with college expenses, but Mrs. Alston was not aware that defendant was withdrawing money during September and October of 1978. However, she insisted that the money belonged to the defendant even though the accounts were in her and her husband's names, and that she had authorized defendant to "take the passbook and get it [the money]" anytime.

Mrs. Alston testified that she learned about the withdrawal when bank officials visited her on 10 October 1978. At that time they informed her that someone was withdrawing money from her account, but she was not told who had made the withdrawals. She said she became upset at the news and subsequently signed six affidavits to the following effect:

> [T]hat after an examination of said check she never signed or authorized any other person to sign her name or said check and that name appearing thereon was made without her knowledge or consent; that she has no knowledge as to the person or persons so doing and further says that she never received the whole or part of the proceeds thereof.

The contents of each affidavit were read to the jury, and each was admitted into evidence.

Mrs. Alston said she did not find out that her granddaughter was the person withdrawing the money until after her arrest on charges of forgery and uttering forged slips. Had she known that the defendant was the person who had made the withdrawals, she would not have signed the affidavits. On cross-examination, she added that she "did not think at all that Laverne [the defendant] might have drawn the money out of the bank and thought someone else had gotten the money." Although she had not notified

the bank that the defendant was authorized to withdraw money from the accounts, she had given defendant permission to sign her name "or do whatever she needed to in order to draw the money out."

Defendant offered no evidence. The jury returned verdicts of "Guilty of forgery" and "Guilty of uttering" in all six cases. Thereafter, defendant pleaded no contest as to the remaining eight counts of forgery and eight counts of uttering.

Prayer for judgment in all 14 cases was continued by the court until 9 April 1979 at which time defendant moved to withdraw her plea of no contest on the ground that "it was not freely and voluntarily made." The motion was denied, and on 10 April 1979 the court entered judgment sentencing defendant to ten years' imprisonment on the charges to which she pleaded no contest, and one year to run at the expiration of the ten years' sentence on the charges of which she was found guilty by the jury. She appealed.

*Attorney General Edmisten, by Assistant Attorney General Archie W. Anders, for the State.*

*C. Ray Joyner for the defendant appellant.*

HEDRICK, Judge.

[1] Defendant assigns as error the denial of her motion for judgment as of nonsuit. Such a motion challenges the sufficiency of the State's evidence for submission to the jury and requires the court to determine whether there is any competent evidence to sustain the allegations of the indictment. *State v. Stewart,* 292 N.C. 219, 232 S.E. 2d 443 (1977); *State v. Murdock,* 225 N.C. 224, 34 S.E. 2d 69 (1945). In making that determination, the court must consider the evidence "in the light most favorable to the State, all contradictions and discrepancies therein must be resolved in its favor and it must be given the benefit of every reasonable inference to be drawn from the evidence." *State v. Yellorday,* 297 N.C. 574, 578, 256 S.E. 2d 205, 209 (1979) [quoting from *State v. Cutler,* 271 N.C. 379, 382, 156 S.E. 2d 679, 681 (1967)]. If there is substantial evidence that the offense charged in the bill of indictment, or a lesser offense included therein, has been committed, and that the defendant committed it, the case is properly for the jury. *State v. Burke,* 36 N.C. App. 577, 244 S.E. 2d 477 (1978).

In the case before us, then, the State must produce at the outset substantial evidence of every essential element of the offense of forgery before it can survive the motion for nonsuit. Those elements are defined by the common law in this State and constitute three in number:

> (1) There must be a false making or alteration of some instrument in writing; (2) there must be a fraudulent intent; and (3) the instrument must be apparently capable of effecting a fraud.

*State v. Phillips*, 256 N.C. 445, 447, 124 S.E. 2d 146, 148 (1962). *See also State v. McAllister*, 287 N.C. 178, 214 S.E. 2d 75 (1975). Moreover, if the purported maker of the instrument "is a real person and actually exists" — as in the case at bar — "the State is required to show not only that the signature in question is not genuine, but [that it] was made by defendant *without authority*." *State v. Phillips, supra* at 448, 124 S.E. 2d at 148. [Our emphasis.] This is so because it is presumed that one signing another's name to an instrument does so *with* authority. *Id. See also* 37 C.J.S., *Forgery* § 80 (1943). It follows that, if the State fails to produce evidence that the person signing the instrument did not have the authority to do so, then the State has failed to carry its burden, and the defendant's motion for judgment as of nonsuit must be allowed.

While there is substantial evidence in the case before us that the defendant withdrew funds from two savings accounts at Peoples Bank and Trust during September and October of 1978; that she signed her grandmother's name to the withdrawal slips; that the accounts were listed in the names of her grandmother and grandfather; and that her grandmother was not aware at the time that the defendant was withdrawing the funds, there remains the question of whether the defendant acted without authority. By signing the name of a real person, she is presumed to possess authority. Hence, the State must offer substantial substantive evidence that she, in fact, lacked permission. Disregarding for the moment the affidavits made by Mrs. Alston and given to bank officials wherein she stated that "she never signed or authorized any other person to sign her name or said check . . .", the State has offered no evidence that defendant's signing of the check was unauthorized. To the contrary, all the

evidence, even when the inconsistencies and discrepancies are resolved in the State's favor, supports only the inference that defendant was authorized to sign the withdrawal slips as she did. Her grandmother, the State's own witness, repeatedly insisted, on direct as well as cross-examination, that she had given such authority to her granddaughter, the defendant.

Therefore, whether the defendant's motion for judgment as of nonsuit should have been granted depends entirely on whether the affidavits given by Mrs. Alston were admissible as substantive evidence in the case. The writings clearly represent, at best, prior inconsistent statements of the witness. They are out-of-court declarations and, when offered to prove the truth of matters asserted therein, they constitute hearsay. C. McCormick, *Handbook of the Law of Evidence* § 251 (1972). Hearsay, unless it falls within one of the exceptions, is not admissible as substantive evidence. *Id.* None of the exceptions apply in this case, and the rule in this State respecting the use of a witness's prior inconsistent statements is inescapable:

> Inconsistent statements are not admissible as substantive evidence of the facts stated therein, nor do they have the effect of nullifying the testimony of the witness. They are simply for the consideration of the jury in determining the witness's credibility.

1 Stansbury's N.C. Evidence, *Witnesses* § 46 at 131 (Brandis rev. 1973). *Accord, State v. Neville*, 51 N.C. 424 (1859); *State v. Brannon*, 21 N.C. App. 464, 204 S.E. 2d 895 (1974), *cert. denied*, 423 U.S. 1086 (1976); *State v. Terry*, 13 N.C. App. 355, 185 S.E. 2d 426 (1971).

In *State v. Brannon, supra*, this Court held that a prior statement on which the State relied could not be considered in passing on the defendant's motion for nonsuit. The same is true of the case now before us. The inconsistent statements Mrs. Alston made in the affidavits were competent only for the purpose of impeaching her credibility. Thus, it is irrelevant whether the court actually allowed their admission as substantive evidence since, even assuming, *arguendo*, that the State could impeach its own witness in this instance, once the affidavits are removed from consideration as substantive evidence, the State is left with no evidence to rebut the presumption that defendant possessed

authority to sign the withdrawal slips in her grandmother's name. If she had authority, she cannot be guilty of forgery, and obviously she cannot be guilty of "uttering" forged instruments. Her motion for judgment as of nonsuit should have been allowed.

[2]  Defendant also assigns as error the denial of her motion to withdraw her plea of no contest to eight counts of forgery and eight counts of uttering made before entry of judgment on the plea. She argues that "[a]t the very least [she] was entitled to an evidentiary hearing on her motion."

Initially, we agree with defendant that she has the right to appeal the denial of her motion. G.S. § 15A-1444 in pertinent part provides:

> (e) Except as provided in G.S. 15A-979, and *except when a motion to withdraw a plea of guilty or no contest has been denied*, the defendant is not entitled to appellate review as a matter of right when he has entered a plea of guilty or no contest to a criminal charge in the superior court, . . .

[Our emphasis.] This case falls within the exception. Moreover, we note that defendant made her motion to withdraw her plea before judgment was entered and sentence imposed. *See State v. Dickens*, 299 N.C. 76, 261 S.E. 2d 183 (1980).

Addressing, then, the merits of her argument, we do not agree that she was entitled "at least" to a hearing to determine if there was a factual basis for allowing the motion. Defendant misconstrues the statute which requires only that the judge determine that there is a factual basis for the plea before accepting it.

> (c) The judge may not accept a plea of guilty or no contest without first determining that there is a factual basis for the plea. This determination may be based upon information including but not limited to:
>
> (1) A statement of the facts by the prosecutor.
>
> (2) A written statement of the defendant.
>
> (3) An examination of the presentence report.
>
> (4) Sworn testimony, which may include reliable hearsay.

(5) A statement of facts by the defense counsel.

G.S. § 15A-1022. Defendant does not contend that the judge failed to determine if there was a factual basis for her plea when he accepted it on 22 February 1979, nor does she assert that no such basis existed. Rather, she would require the judge to conduct a hearing and make findings of fact on a motion to withdraw a plea in all cases. However, our Supreme Court has recently resolved this question conversely by holding that evidentiary hearings on a motion to withdraw a plea are mandatory "only when necessary to resolve questions of fact." *State v. Dickens, supra* at 84, 261 S.E. 2d at 188.

> [I]n most cases reference to the verbatim record of the guilty plea proceedings will conclusively resolve all questions of fact raised by a defendant's motion to withdraw a plea of guilty and will permit a trial judge to dispose of such motion without holding an evidentiary hearing.

*Id.* In *Dickens*, the defendant moved to withdraw his plea on the grounds that he thought a plea bargain had been struck before he entered his plea of guilty which would allow him to make restitution rather than serve a prison sentence. The Transcript of Plea in the record revealed that he had not answered the question as to whether he had discussed or entered into a plea bargain. Thus, the Court found that his allegations raised a question of fact which must be resolved at an evidentiary hearing.

But, in the present case, defendant has not raised a question of fact which cannot be answered by reference to the Transcript of Plea. She based her motion on her allegation that her plea was not freely and voluntarily made. Reference to the Transcript of Plea, however, confirms that she was asked, "Do you enter this plea of your own free will, understanding what you are doing?" She answered affirmatively. In our opinion, the judge resolved the issue of the voluntariness of her plea before he accepted it, and no new issue of fact was raised by her motion. Hence, the judge was able to dispose of her motion without conducting a hearing thereon. In such a case, the judge's ruling on the motion is discretionary and will not be disturbed in the absence of an abuse of his discretion. *State v. Crandall*, 225 N.C. 148, 33 S.E. 2d 861 (1945). Here, defendant has shown no such abuse in the denial of her motion.

We have carefully examined other assignments of error argued by defendant and find them to be moot and without merit.

The result is: With respect to cases numbered 78CRS7707, 78CRS7709, 78CRS7721, 78CRS7723, 78CRS7725, and 78CRS7729, wherein defendant pled not guilty to six counts of forgery and six counts of uttering, the judgment is reversed. With respect to cases numbered 78CRS7705, 78CRS7711, 78CRS7713, 78CRS7715, 78CRS7717, 78CRS7719, 78CRS7727, and 78CRS9767, wherein defendant entered a plea of no contest, the judgment is affirmed.

Reversed in part; affirmed in part.

Judge VAUGHN concurs.

Judge CLARK dissents.

Judge CLARK dissenting.

I agree with the majority that at trial the State failed to offer evidence sufficient to submit the charges to the jury, but I do not agree that there was a factual basis for the no contest pleas.

A judge may not accept a plea of no contest without first determining that there is a factual basis for the plea. N.C. Gen. Stat. 15A-1022(c). Defendant did not in the Transcript of Plea state orally or in writing that she was guilty of the charges. I find nothing in the record on appeal to support the finding in the court's Plea Adjudication that there was a factual basis for the no contest plea other than the evidence offered at the trial on the other six charges of forgery and uttering, and I agree with the majority decision that judgment of nonsuit (dismissal) should have been allowed.

In *State v. Dickens*, 299 N.C. 76, 261 S.E. 2d 183 (1980), the record on appeal contained "an abundance of information before the trial judge to constitute a factual basis for the pleas of guilty and to support their acceptance." I do not interpret *Dickens* as meaning that the court finding of a factual basis need not be supported.

Further, the evidence at trial on the six charges of forgery and uttering negates a factual basis since the evidence was not

sufficient to support guilty verdicts. All fourteen charges of forgery and uttering allege that defendant forged the name of Alice Alston, beginning 31 August 1978 and ending on 6 October 1978. The six charges at trial involve checks made and uttered between these two dates. The testimony of Alice Alston tended to show that she gave to defendant blanket authority to sign the checks.

In my opinion the pleas of no contest and the judgment based thereon should be vacated.