ZACHARY, Judge.
 

 *159
 
 Laquan Tirik Little (defendant) appeals from judgment entered upon his conviction for robbery with a dangerous weapon. On appeal, defendant argues that the trial court erred in its colloquy with defendant concerning the scope of cross-examination to which defendant would be exposed if he chose to testify. Defendant also contends that the trial court committed error and plain error by admitting certain photographs
 
 *160
 
 downloaded from the Facebook and Instagram websites to illustrate the testimony of the State's witnesses. Upon careful consideration of defendant's arguments in light of the record and the applicable law, we conclude that these arguments lack merit and that defendant is not entitled to relief on appeal.
 

 I. Factual and Procedural Background
 

 This appeal arises from an incident in which a motorcycle was stolen at gunpoint from the bike's fourteen-year-old owner. On 12 October 2015, the Grand Jury of Guilford County indicted defendant for robbery with a dangerous weapon and for possession of a firearm by a felon. At some point after these indictments were returned, defendant was also charged with possession of a controlled substance in a confinement facility. The charges against defendant came on for trial at the 17 February 2015 criminal session of Superior Court for Guilford County, the Honorable L. Todd Burke presiding. At the outset of the trial, the prosecutor dismissed the charge of possession of a firearm by a felon and announced that the State was postponing its prosecution on the charge of possession of a controlled substance in a confinement facility. Defendant did not testify or present evidence at trial. The State's evidence tended to show, in relevant part, the following:
 

 Randy Garcia testified that he was fifteen years old and attended high school. On 13 May 2015, the date of the incident giving rise to the charge against defendant, Mr. Garcia had been fourteen years old. Mr. Garcia owned a Honda motorcycle and during the afternoon of 13 May 2015, Mr. Garcia was riding his motorcycle in his neighborhood. Mr. Garcia's ten-year-old friend, Anthony Salazar, was a passenger on the bike. During the ride, a car approached the motorcycle and stopped about five feet from the boys. The passenger in the car pointed a gun through the window, and then exited the car and ran toward Mr. Garcia and Mr. Salazar, pointing the gun at them. The man demanded that the boys get off the motorcycle and when they complied, he got on the motorcycle and drove away. Mr. Garcia testified that when defendant got out of the car, he approached Mr. Garcia until they were close
 
 *429
 
 together. Mr. Garcia noticed that defendant had tattoos on his neck and arm, and described defendant's firearm as a gray handgun with an extended barrel. In court, Mr. Garcia identified defendant as the man who had stolen his motorcycle at gunpoint.
 

 After defendant rode away on Mr. Garcia's motorbike, the two boys walked to Mr. Garcia's home. Soon thereafter, a neighbor, Victor Rivera-Salazar, came to Mr. Garcia's house. Mr. Garcia called the police and gave
 
 *161
 
 a statement about the incident. Law enforcement officers later showed Mr. Garcia a photographic lineup from which he identified defendant as the person who had robbed him. At trial, Mr. Garcia was shown several photographic exhibits which he used to illustrate his testimony about the appearance of his motorcycle, defendant, and the gun that defendant had brandished.
 

 Victor Rivera-Salazar testified that he was a seventeen-year-old high school senior, that Anthony Salazar was his younger brother, and that they lived in the same neighborhood as Mr. Garcia. On 13 May 2015, Mr. Rivera-Salazar heard the sound of Mr. Garcia's motorcycle and went to look for him. When Mr. Rivera-Salazar located the motorcycle, defendant was attempting to start it and Mr. Rivera-Salazar confronted defendant about his possession of the motorcycle. Defendant claimed that Mr. Rivera-Salazar's friend had loaned him the bike and then rode away on the bike. During his conversation with defendant, Mr. Rivera-Salazar stood very close, "face to face," and observed that defendant had tattoos on his hands and neck. He identified defendant at trial and testified that he was "a hundred percent" sure that defendant was the person with whom he had spoken. After defendant rode away, Mr. Rivera-Salazar went to Mr. Garcia's house. Mr. Rivera-Salazar later identified defendant in a photographic line-up. Mr. Rivera-Salazar used State's Exhibits Nos. 1-3 to illustrate his testimony.
 

 Greensboro Police Officer D.T. Sims testified that on 13 May 2015 he was dispatched to Mr. Garcia's house, where Mr. Rivera-Salazar and Mr. Garcia gave statements similar to their trial testimony. Greensboro Police Detective R. E. Ferrell testified that, after he had interviewed Mr. Garcia and read the police reports about the robbery, he then looked at photographs that had been shared on the social media sites Facebook and Instagram. On the Facebook page for an individual who identified himself online as "L-Nice Little," Detective Ferrell found the photograph that was marked as State's Exhibit No. 1, depicting a motorcycle that matched the description that the detective had been given for Mr. Garcia's motorbike. On Instagram, Detective Ferrell found the photographs designated as State's Exhibits Nos. 4 and 5.
 
 [1]
 
 In the course of his investigation, Detective Ferrell also obtained a possible home address for defendant. Greensboro Police Officer B.E. Faust testified that on 16 May 2015 he observed a motorcycle parked behind the house at this
 
 *162
 
 address, and used State's Exhibit No. 1 to illustrate his testimony about this motorcycle.
 

 On 17 February 2016, the jury returned a verdict finding defendant guilty of robbery with a dangerous weapon. The prosecutor dismissed the charge of possession of a controlled substance in a confinement facility. The trial court imposed a sentence of 72 to 99 months' imprisonment. Defendant gave notice of appeal in open court.
 

 II. Trial Court's Instructions to Defendant on the Right to Testify
 

 After the State rested, defense counsel informed the trial court outside the presence of the jury that she and defendant had been discussing whether defendant would testify at trial and that she thought defendant wanted to testify. Defendant's counsel asked the court to "just put that on the record." In response, the trial court conducted the following colloquy in which the court warned defendant that he would be subject to cross-examination if he testified at trial:
 

 *430
 
 THE COURT: All right. Mr. Little, you have the right to remain silent.
 

 BAILIFF: Stand up, sir.
 

 THE COURT: You don't have to testify. You have the right to remain silent. That's your Fifth Amendment constitutional right that you not self-incriminate yourself. However, if you want to waive your right of silence and testify, you can do that also. Are you trying to determine which one you're going-how you're going to proceed at this time, whether you're going to testify or not, is that correct?
 

 DEFENDANT: Yes, sir.
 

 THE COURT: Now you must understand that if you take the witness stand to testify, your attorney will ask you questions, but also the prosecutor will be able to ask you questions. The prosecutor also will be able to ask you about your prior record, and I instruct the jury about persons who have prior criminal convictions on their record, and if they feel like that conviction impacts the witness credibility, they can consider it for that purpose. They're not-they're instructed they're not necessarily to convict you for something now just because you've been charged with something previously, but, as you can imagine, when they hear that you have criminal convictions, they're going
 
 *163
 
 to-you take the witness stand, the State is going to ask you about it and they're going to hear that you have a criminal record, and do you understand that?
 

 DEFENDANT: Yes, sir.
 

 THE COURT: And the DA can ask you about convictions all the way back 10 years ago, and your convictions are within 10 years. Your oldest conviction is in 2010. So he'll be able to ask you about all of your prior criminal convictions. You have an attempted breaking and entering, possession of stolen property, another breaking and entering, a larceny, discharging a weapon into occupied property, and a possession of a firearm by a felon. The DA will be able to ask you and the jury will hear all of this criminal history if you take the witness stand. So it's up to you whether you want to take the witness stand or not. So I just wanted to advise you of your rights and let you know what will be allowed and what the jury will hear and how it may be perceived. I don't know exactly how it will be perceived, but I give them an instruction on how they're to consider it. All right. Anything else before we take our recess?
 

 On appeal, defendant argues that the trial court's instructions to defendant concerning defendant's exposure to cross-examination if he testified "impermissibly and unconstitutionally chilled" defendant's right to testify. Defendant contends that the trial court "misadvised the defendant" and "gave a coercive explanation of the law that evidenced judicial intimidation[.]" We do not agree.
 

 We first observe that defendant did not object to the court's statements, which were made outside of the jury's presence, and did not ask the trial court to amplify or modify its comments to defendant. Assuming, without deciding, that this issue is nonetheless preserved for appellate review, we conclude that defendant's argument lacks merit.
 

 N.C. Gen. Stat. § 8C-1, N.C. R. Evid. 611(b) (2015) provides that a witness "may be cross-examined on any matter relevant to any issue in the case, including credibility." "Moreover, a witness may be impeached on cross-examination by, among other things, evidence of prior convictions, opinion testimony as to reputation, and evidence of specific instances of conduct if probative of truthfulness or untruthfulness."
 
 State v. Call
 
 ,
 
 349 N.C. 382
 
 , 411,
 
 508 S.E.2d 496
 
 , 514 (1998) (citing N.C. Gen. Stat. § 8C-1, Rules 404, 405, 608, 609 ). "In North Carolina, a 'trial
 
 *164
 
 court has broad discretion over the scope of cross-examination.' "
 
 State v. Edmonds
 
 ,
 
 236 N.C.App. 588
 
 , 597,
 
 763 S.E.2d 552
 
 , 558 (2014) (quoting
 
 Call
 
 ,
 
 349 N.C. at 411
 
 ,
 
 508 S.E.2d at
 
 514 ). Regarding impeachment by evidence of a witness's prior criminal convictions, Rule 609 of the North Carolina Rules of Evidence provides that "for the purpose of attacking the credibility of a witness" evidence may be admitted that within the previous ten years, the witness was convicted of "a felony, or of a Class A1, Class 1, or Class 2 misdemeanor[.]"
 

 The rules governing impeachment of a witness apply to a criminal defendant. "Once the defendant takes the stand, 'his credibility may be impeached and his testimony
 
 *431
 
 assailed like that of any other witness.' "
 
 State v. Fair
 
 ,
 
 354 N.C. 131
 
 , 161,
 
 557 S.E.2d 500
 
 , 521 (2001) (quoting
 
 Brown v. United States
 
 ,
 
 356 U.S. 148
 
 , 154,
 
 78 S.Ct. 622
 
 , 626,
 
 2 L.Ed.2d 589
 
 , 596 (1958) ). In this case, the trial court limited its discussion with defendant to the possibility of impeachment by proof of prior convictions.
 

 Defendant argues that the trial court erred in its statements to defendant regarding the scope of permissible cross-examination concerning defendant's prior criminal convictions. We disagree. In its discussion with defendant, the trial court informed him, in relevant part, that:
 

 THE COURT: Now you must understand that if you take the witness stand to testify, your attorney will ask you questions, but also the prosecutor will be able to ask you questions. The prosecutor also will be able to ask you about your prior record[.]
 

 ...
 

 THE COURT: And the DA can ask you about convictions all the way back 10 years ago, and your convictions are within 10 years. Your oldest conviction is in 2010. So he'll be able to ask you about all of your prior criminal convictions.... The DA will be able to ask you and the jury will hear all of this criminal history if you take the witness stand.
 

 Defendant contends that the trial court erred by stating that the prosecutor would be able to cross-examine him regarding "all of your prior criminal convictions." However, this statement was made in the context of the trial court's determination that all of defendant's prior convictions occurred within the past ten years. The court was not suggesting that defendant could be cross-examined about convictions that were more than ten years old. Defendant also asserts that the trial court "did not
 
 *165
 
 explain the limited scope" of cross-examination, and directs our attention to cases holding that a defendant may not be cross-examined about the factual details of the offense that led to a prior conviction. However, defendant identifies nothing in the trial court's instructions to defendant suggesting that defendant would be subject to cross-examination beyond the permissible inquiry into the name of the crime, the time and place of conviction, and the punishment imposed. We conclude that defendant has failed to establish that the trial court gave an incorrect instruction as to the scope of permissible cross-examination regarding his prior criminal convictions.
 

 In addition, defendant contends that the court's comments were incorrect insofar as they addressed the limiting instruction that the court would give the jury on the purpose for which the jury could consider evidence of defendant's prior convictions. The trial court made the following statements on this issue:
 

 THE COURT: ... I instruct the jury about persons who have prior criminal convictions on their record, and if they feel like that conviction impacts the witness credibility, they can consider it for that purpose. They're not-they're instructed they're not necessarily to convict you for something now just because you've been charged with something previously, but, as you can imagine, when they hear that you have criminal convictions, they're going to-you take the witness stand, the State is going to ask you about it and they're going to hear that you have a criminal record, and do you understand that?
 

 ...
 

 I don't know exactly how it will be perceived, but I give them an instruction on how they're to consider it.
 

 We conclude that the trial court accurately informed defendant that, if he chose to testify, the court would instruct the jury that it could consider his prior convictions only to the extent that the jury found defendant's criminal record relevant to his credibility. Defendant contrasts the trial court's statements with the Pattern Jury Instruction that a trial court typically gives a jury on its duty to consider a defendant's prior convictions only in regard to defendant's credibility. It is true that, while the Pattern Jury Instruction expressly directs the jury that evidence of a defendant's prior convictions may be considered "for one purpose only," the trial court told defendant that the jury would be instructed that it should "not necessarily convict" defendant "just because you've been
 
 *166
 
 charged with something previously[.]" However,
 
 *432
 
 the trial court also told defendant that it would instruct the jury to consider defendant's prior convictions as they pertained to defendant's credibility.
 

 We conclude that the court's use of the word "necessarily," even if technically erroneous, was insignificant in the context of the court's entire discussion with defendant. Moreover, defendant was represented by counsel with whom he was able to consult. In
 
 State v. Autry
 
 ,
 
 321 N.C. 392
 
 , 404,
 
 364 S.E.2d 341
 
 , 348 (1988), the defendant argued that the trial court had made an error of constitutional magnitude in its misstatements to the defendant about the effect of a defendant's decision to testify at trial. Our Supreme Court held that:
 

 [T]hough the trial court did misstate the law in its instruction to defendant concerning his decision as to whether to testify, the trial court repeatedly made very clear to defendant that he should consult his attorney before making any decision on the matter.... We hold that, here, where the trial court's error in its instructions to defendant was insulated by defendant's access to and actual conference with his attorney, the trial court's instructional error is harmless beyond a reasonable doubt.
 

 Id
 
 . at 404,
 
 364 S.E.2d at 348
 
 . Defendant argues further that the trial court gave defendant "a slanted and negative explanation of the law" that "focused on the negative aspects of the right to testify" rather than "provid[ing] a balanced approach." Defendant cites no authority for his view that the trial court had a duty to provide defendant with a comprehensive summary of the advantages and disadvantages of a decision to testify. "[W]e have never required trial courts to inform a defendant of his right not to testify and to make an inquiry on the record indicating that any waiver of this right was knowing and voluntary."
 
 State v. Carroll
 
 ,
 
 356 N.C. 526
 
 , 533,
 
 573 S.E.2d 899
 
 , 905 (2002). Given that the trial court had no obligation to inform defendant of the possible consequences of a decision to testify, we conclude that the trial court was not required to balance its discussion of impeachment with an instruction on the advantages of testifying.
 

 For the reasons discussed above, we conclude that the trial court did not err in its warning to defendant that if he chose to testify he would be exposed to impeachment on cross-examination by evidence of his prior convictions. Defendant is not entitled to relief on the basis of this argument.
 

 *167
 

 III Introduction of Photographs for Illustrative Purposes
 

 During trial, Mr. Garcia was shown four photographs, comprising State's Exhibits Nos. 1 through 4. Mr. Garcia identified Exhibit No. 1 as depicting his motorcycle, Exhibits Nos. 2 and 3 as photographs of defendant, and Exhibit No. 4 as depicting defendant holding the firearm with which he robbed Mr. Garcia. Defendant did not object to the prosecutor's questions to Mr. Garcia about the photographs. At the conclusion of his examination of Mr. Garcia, the prosecutor asked to introduce the photographs that he had shown the witness for illustrative purposes. Defendant objected on the grounds that no evidence had been introduced to establish who had taken the photographs and when they were taken. The trial court overruled defendant's objection and the jury was shown the photographs. The State also introduced State's Exhibit No. 5 for illustrative purposes, without objection. State's Exhibit No. 5 depicted defendant with an extended magazine handgun. On appeal, defendant argues that the trial court erred by admitting State's Exhibits Nos. 1 and 4, and committed plain error by admitting State's Exhibit No. 5. We conclude that defendant's argument lacks merit.
 

 A. Admission of Photographs: Legal Principles
 

 N.C. Gen. Stat. § 8-97
 
 (2015) provides that
 

 Any party may introduce a photograph, video tape, motion picture, X-ray or other photographic representation as substantive evidence upon laying a proper foundation and meeting other applicable evidentiary requirements. This section does not prohibit a party from introducing a photograph or other pictorial representation solely for the purpose of illustrating the testimony of a witness.
 

 *433
 
 "Rule 901 of our Rules of Evidence requires authentication or identification 'by evidence sufficient to support a finding that the matter in question is what its proponent claims.' N.C. Gen. Stat. § 8C-1, Rule 901 [ (2015) ]."
 
 State v. Murray
 
 ,
 
 229 N.C.App. 285
 
 , 288,
 
 746 S.E.2d 452
 
 , 455 (2013). "In order for a photograph to be introduced, it must first be properly authenticated by a witness with knowledge that the evidence is in fact what it purports to be."
 
 State v. Lee
 
 ,
 
 335 N.C. 244
 
 , 270,
 
 439 S.E.2d 547
 
 , 560 (1994).
 

 " 'Photographs are usually competent to be used by a witness to explain or illustrate anything that is competent for him to describe in
 
 *168
 
 words.' "
 
 State v. Robinson
 
 ,
 
 355 N.C. 320
 
 , 334,
 
 561 S.E.2d 245
 
 , 254 (2002) (quoting
 
 State v. Watson
 
 ,
 
 310 N.C. 384
 
 , 397,
 
 312 S.E.2d 448
 
 , 457 (1984) ).
 
 See, e.g.,
 

 State v. Thibodeaux
 
 ,
 
 341 N.C. 53
 
 , 63-64,
 
 459 S.E.2d 501
 
 , 508 (1995) (upholding admission of photograph of the defendant "wearing a shoulder holster containing a .357-caliber revolver" that was used "to illustrate [a witness's] testimony concerning defendant's possession and control of the murder weapon"). Photographs are admissible for illustrative purposes if they fairly and accurately illustrate the subject of a witness's testimony.
 
 State v. Alston
 
 ,
 
 91 N.C.App. 707
 
 , 713,
 
 373 S.E.2d 306
 
 , 311 (1988) ("The trial court admitted the photographs for illustrative purposes only.... The officer clearly indicated that the photographs accurately portrayed what he had observed. Thus, the photographs were properly authenticated for illustrative purposes.").
 

 B. Discussion
 

 In the present case, it is undisputed that the photographs challenged by defendant were introduced solely to illustrate the testimony of Mr. Garcia and other witnesses. The transcript includes the following dialogue, which took place prior to the admission of the photographs:
 

 PROSECUTOR: Sir, if the jury were to see those photographs, 1 through 4, you looked at, would it help them understand what those people or items looked like at the time of this incident?
 

 MR. GARCIA: Yes.
 

 PROSECUTOR: If the jury were to see them, would it help them understand what those people or items looked like?
 

 MR. GARCIA: Yes.
 

 PROSECUTOR: Your Honor, I'd move to introduce State's Exhibits 1 through 4 for illustrative-
 

 THE COURT: Any objection?
 

 DEFENSE COUNSEL: Yes, Your Honor. We don't have-I don't think there's been any evidence about when they were taken or anything such as that, or who took them; who took the photographs, when they were taken.
 

 THE COURT: Overruled. Allowed.
 

 In its instructions to the jury, the trial court stated that: "Photographs were introduced into evidence in the case for the purpose of illustrating
 
 *169
 
 and explaining the testimony of the witness. These photographs may not be considered by you for any other purpose." We also note that defendant has not argued on appeal that the photographs were introduced as substantive evidence. We conclude that State's Exhibits Nos. 1, 4, and 5 were introduced to illustrate the testimony of the State's witnesses. As previously noted, defendant does not challenge the admission of State's Exhibits Nos. 2 and 3.
 

 In his appellate brief, defendant does not argue that the photographs did not illustrate the testimony of the witnesses, or otherwise failed to meet the standard for introduction of a photograph solely to illustrate the testimony of a witness. Nor does defendant argue that the limiting instruction given by the trial court was insufficient to cure the prejudice arising from the use of the photographs as illustrative evidence. Instead, defendant contends that the photographs should not have been admitted, on the grounds that the State failed properly authenticate the exhibits. Defendant maintains that the State failed to introduce evidence establishing that the Facebook and Instagram accounts from which the photographs were downloaded were linked to defendant, or to introduce evidence identifying the photographer and the time and place where the photographs were taken. Defendant is essentially asking that the standard for authentication
 
 *434
 
 of a photograph to be admitted as
 
 substantive
 
 evidence be applied in the present case, in which the photographs were introduced only to illustrate the witnesses' testimony. The cases cited by defendant are ones in which a party sought to introduce a photograph as substantive evidence, and defendant has failed to cite any cases in which a court required a party to provide the type of authentication that defendant contends was necessary in order to introduce a photograph as
 
 illustrative
 
 evidence. Defendant has also failed to cite any authority or offer a legal argument for the proposition that the requirements for admission of a photograph from a website as illustrative evidence should be any different from the use of a photograph from another source. We conclude that the trial court did not err by allowing the State's witnesses to illustrate their testimony with State's Exhibits Nos. 1, 4, and 5, and that defendant has failed to show that he is entitled to relief on the basis of this argument.
 

 IV. Conclusion
 

 For the reasons discussed above, we conclude that the trial court did not err in its colloquy with defendant regarding the implications of his decision on whether to testify at trial, or in its admission of photographs
 
 *170
 
 from social media sites as illustrative evidence, and that defendant had a fair trial, free of reversible error.
 

 NO ERROR.
 

 Judges INMAN concurs.
 

 Judge BRYANT concurs in result only.
 

 [1]
 

 No evidence was introduced regarding the source for the photographs marked as State's Exhibits Nos. 2 and 3. Because defendant has not challenged the admission of these exhibits, we do not discuss them further.