IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-216

No. COA20-343

Filed 18 May 2021

Cleveland County, Nos. 18 CRS 2096, 2097

STATE OF NORTH CAROLINA,

v.

ANGELA MICHELLE MCSWAIN, Defendant.

Appeal by defendant from judgment entered 20 December 2019 by Judge William A. Wood II in Cleveland County Superior Court. Heard in the Court of Appeals 14 April 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Erin Hukka, for the State.*

*Richard J. Costanza for Defendant-Appellant.*

CARPENTER, Judge.

¶ 1          Angela Michelle McSwain ("Defendant") appeals pursuant to N.C. Gen. Stat. § 7A-27(b) from judgment entered after a jury found her guilty of forgery of an endorsement pursuant to N.C. Gen. Stat. § 14-120, uttering a forged check pursuant to N.C. Gen. Stat. § 14-120, and attaining habitual felon status pursuant to N.C. Gen. Stat. § 14-7.1. On appeal, Defendant argues that the State failed to prove the element of falsity for the offenses of forgery of an endorsement and uttering a forged check.

After careful review, we find no error.

## I. Factual & Procedural Background

The evidence at trial tended to show the following: Malcom Parker ("Mr. Parker") was a long-time friend and next-door neighbor of John McGinnas ("Mr. McGinnas"). He served as the power of attorney of Mr. McGinnas from early 2018 up until Mr. McGinnas' death on 12 September 2019. Mr. Parker testified that Mr. McGinnas' sister appointed him attorney-in-fact when Mr. McGinnas' health began to decline rapidly, and she was living in Australia. In his role as Mr. McGinnas' attorney-in-fact, Mr. Parker controlled Mr. McGinnas' finances, "look[ed] after his welfare," and made periodic visits to his house to check on the property.

Mr. Parker paid Mr. McGinnas' bills as well as received and reviewed his bank statements from HomeTrust Bank as part of his duty to manage finances. To sign a check on behalf of Mr. McGinnas, Mr. Parker would sign as "John L. McGinnas" and write above the signature, "Malcom Parker" and "Power of Attorney." Mr. Parker testified he never gave Mr. McGinnas' checks to anyone nor did he give Defendant permission to use or write any of the checks.

During one visit to Mr. McGinnas' home in August 2018, Mr. Parker noticed that the window in Mr. McGinnas' vehicle had been "busted out" and items had been stolen from it. Two days later, Mr. Parker returned to Mr. McGinnas' home and found that it had also been broken into. Mr. Parker testified that heaters, old coins, and

checkbooks were missing from the home. Both incidents were reported to the Cherryville Police Department. Mr. McGinnas was hospitalized throughout August 2018, and after being discharged, was admitted to a rest home.

¶ 5　　　In October 2018, Mr. Parker noticed a "discrepancy" in a check dated 15 September 2018, in reviewing the current monthly statement detailing Mr. McGinnas' checking account. Mr. Parker testified that he knew Mr. McGinnas' "signature because he couldn't hardly write" and did not recognize the signature on this check to be either Mr. McGinnas' or his own. He promptly notified HomeTrust Bank of the suspected fraudulent check and spoke with one of the bank's managers. Mr. Parker was under the impression that HomeTrust Bank had then contacted the Cherryville Police Department.

¶ 6　　　Mr. Parker also testified he personally knew Defendant because she lived in Mr. McGinnas' neighborhood, where Mr. Parker also used to reside. According to Mr. Parker, Mr. McGinnas did not have a relationship with Defendant and did not have many friends.

¶ 7　　　Wanda Weedman ("Ms. Weedman"), a Mary Kay Independent Beauty Consultant, also testified for the State. Ms. Weedman testified that she sold Mary Kay products at a party hosted by one of her customers on 15 September 2018. Among the attendees was Defendant, who approached Ms. Weedman and asked her if she would accept her elderly father's check to purchase the Mary Kay makeup

products for her two friends who accompanied her to the party. According to Ms. Weedman, Defendant told her that she had "permission to use [her father's checking] account because she was his caretaker." Ms. Weedman agreed to accept the check so long as "all the information [was] correct on the check." She verified Defendant's driver's license and witnessed Defendant sign and write the check in the amount of $325.73. In the course of their purchases, Defendant and her two friends also provided Ms. Weedman with their email addresses and dates of birth.

¶ 8        Mark Stout ("Lt. Stout"), a lieutenant investigator with the City of Cherryville Police Department, testified under the State's direct examination that he was contacted by HomeTrust Bank regarding a suspected forged check. However, during cross-examination by Defendant's counsel, Lt. Stout recalled that it was Mr. Parker, not HomeTrust Bank, who initially contacted him regarding a check written on Mr. McGinnas' account while Mr. McGinnas was in a nursing home.

¶ 9        In his investigation, Lt. Stout learned that the check at issue was deposited by a Ms. Weedman in a bank located in Marion, and he obtained video surveillance of her depositing it. He contacted Ms. Weedman and spoke with her regarding the check. At first, she was unfamiliar with the check but recalled having received it after Lt. Stout provided the check amount and other details.

¶ 10        Ms. Weedman offered to help in the investigation and stated she could recognize the subject. She provided Lt. Stout with a written statement in which she

gave her account of her interaction with Defendant, a detailed listing of the products Defendant purchased, and the contact information Defendant and her friends had given her. Ms. Weedman subsequently sent an email to Lt. Stout containing a photograph of Defendant she had obtained from a Facebook account in the same name as Defendant and wrote, "[t]his is a picture of the person [who wrote the check]." She testified that the photograph she gave Lt. Stout was a "picture of the lady that [she] saw at the party," and identified Defendant in open court as the same person who was depicted in the photograph.

¶ 11        On 14 November 2018, Defendant spoke voluntarily with Lt. Stout and completed a consent form in which she included her phone number prior to the interview. In the interview, Defendant denied having attended the Mary Kay Cosmetics party on 15 September 2018.

¶ 12        Lt. Stout ran the driver's license number that was provided on the check and found that it differed by two digits from Defendant's actual number. Further, the phone number written on the check was off by only one digit from the phone number Defendant produced in her interview with Lt. Stout.

¶ 13        On 3 December 2018, the Cleveland County Grand Jury returned a true bill of indictment charging Defendant with forgery of an endorsement, uttering a forged instrument, and attaining habitual felon status. On 16 September 2019, the Cleveland County Grand Jury returned a superseding indictment charging

Defendant with forgery of an endorsement and uttering a forged instrument. A photocopy of the alleged forged check was attached to the superseding indictment.

¶ 14 On 16 December 2019, Defendant's case came on for a jury trial in the Cleveland County Superior Court before the Honorable William A. Wood II. At the close of the State's evidence, Defendant moved to dismiss the case based on insufficiency of evidence and moved to dismiss the habitual felon indictment. The trial court denied both motions.

¶ 15 Defendant did not testify, nor did she present any evidence. At the close of all evidence, Defendant renewed her motions to dismiss, which were both denied. On 20 December 2019, the jury found Defendant guilty of forgery of a check, uttering a forged check, and attaining habitual felon status. Defendant gave oral notice of appeal in open court after the final judgment was entered.

## II. Jurisdiction

¶ 16 This Court has jurisdiction to address Defendant's appeal pursuant to N.C. Gen. Stat. § 7A-27(b) (2019).

## III. Motion to Dismiss

¶ 17 The sole issue on appeal is whether the trial court erred in denying Defendant's motion to dismiss the charges of forgery of a check and uttering a false check by finding substantial evidence Defendant acted without authority when she signed the check.

¶ 18        Defendant argues that the trial court erred in denying her motion to dismiss because the State failed to show substantial evidence of each element of the offenses charged.

## A. <u>Standard of Review</u>

¶ 19        We review "the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted).

> A motion to dismiss for insufficient evidence is properly denied if there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. All evidence, both competent and incompetent, and any reasonable inferences drawn therefrom, must be considered in the light most favorable to the State. Additionally, circumstantial evidence may be sufficient to withstand a motion to dismiss when a reasonable inference of defendant's guilt may be drawn from the circumstances. If so, it is the jury's duty to determine if the defendant is actually guilty.

*State v. Blakney*, 233 N.C. App. 516, 518, 756 S.E.2d 844, 846 (2014), *disc. rev. denied*, 367 N.C. 522, 762 S.E.2d 204 (2014) (citations and quotations omitted).

¶ 20        "The State is entitled to every reasonable inference to be drawn from the evidence. Contradictions and discrepancies do not warrant dismissal of the case; rather, they are for the jury to resolve." *State v. Franklin*, 327 N.C. 162, 172, 393 S.E.2d 781, 787 (1990).

B. <u>Analysis</u>

1. *Authority to Sign*

¶ 21      In her first argument, Defendant relies on *State v. Phillips*, 256 N.C. 445, 124 S.E.2d 146 (1962) and *State v. Sinclair*, 45 N.C App. 586, 263 S.E.2d 811, *rev'd on other grounds*, 301 N.C. 193, 270 S.E.2d 418 (1980), in contending the State failed to prove her signature on Mr. McGinnas' check was false or, in other words, made without his authority. We disagree.

¶ 22      The necessary elements of the offense of forgery include: (1) a false making or alteration of some instrument in writing, (2) a fraudulent intent, and (3) the instrument must be apparently capable of effecting a fraud. *Phillips*, 256 N.C. at 447, 124 S.E.2d at 148 (citation omitted); *see also* N.C. Gen. Stat. § 14-120 (2019); *State v. King*, 178 N.C. App. 122, 128, 630 S.E.2d 719, 723 (2006).

¶ 23      "The essential elements of the crime of uttering a forged check are (1) the offer of a forged check to another, (2) with knowledge that the check is false, and (3) with the intent to defraud or injure another." *State v. Hill*, 31 N.C. App. 248, 249, 229 S.E.2d 810, 810 (1976); *see also* N.C. Gen. Stat. § 14-120; *State v. Conley*, 220 N.C. App. 50, 60, 724 S.E.2d 163, 170, *disc. rev. denied*, 366 N.C. 238, 731 S.E.2d 413 (2012).

¶ 24      When a person signs another's name to an instrument, it is presumed that the person has authority to do so. *State v. Shipman*, 77 N.C. App. 650, 653, 335 S.E.2d

912, 914 (1985). In response to this presumption, our Supreme Court has stated,

> if the purported maker [of an instrument] is a real person
> and actually exists, the State is required to show not only
> that the signature in question is not genuine, but was made
> by defendant without authority. To show that the
> defendant signed the name of some other person to an
> instrument, and that he passed such instrument as
> genuine, is not sufficient to establish the commission of a
> crime.

*Phillips*, 256 N.C. at 448, 124 S.E.2d at 148 (quotation marks omitted).

¶ 25 Defendant asserts her case is analogous to *Phillips* and its line of cases because the State failed to meet its burden to show Defendant acted without authority in writing the check. She further maintains that the State could have called her case for trial while Mr. McGinnas was still alive to testify or, alternatively, it could have called witnesses from HomeTrust Bank to testify as to the individuals authorized to sign on Mr. McGinnas' account. We disagree that such testimony was necessary to establish a reasonable inference of Defendant's guilt of the offenses, and we find *Phillips* and *Sinclair* distinguishable from the case *sub judice*.

¶ 26 In *State v. Phillips*, the State did not present evidence to show the falsity of the instrument the defendant tendered, nor did it offer evidence that the purported maker of the check was a fictitious person. 256 N.C. at 447–49, 124 S.E.2d at 148. The sole evidence provided by the State was testimony showing that "no money was received for that check"—the trial court found this evidence was insufficient to

conclude the check was signed without authority because the check could have been rejected by the bank for payment for any number of reasons, including insufficient funds. *Id.* at 449, 124 S.E.2d at 148–49. The State made no effort to locate the purported maker of the check to prove the instrument was written without authorization. *Id.* at 449, 124 S.E.2d at 149. This Court held that the trial court erred by denying the motion to dismiss, and therefore, reversed the trial court's judgment. *Id.* at 449, 124 S.E.2d at 149.

¶ 27        In *State v. Sinclair*, the defendant signed her grandmother's name to withdrawal slips in order to withdraw funds from her grandparents' account. 45 N.C App. at 590, 263 S.E.2d at 814. At issue in *Sinclair* was whether the defendant acted without authority in withdrawing the funds. *Id.* at 590, 263 S.E.2d at 814. The defendant's grandmother testified on behalf of the State that she had given her granddaughter authority. *Id.* at 591, 263 S.E.2d at 814. The *Sinclair* Court noted all the evidence, even when taken in the light most favorable to the State, "support[ed] only the inference that [the] defendant was authorized to sign the withdrawal slips . . . ." *Id.* at 590–91, 263 S.E.2d at 814.

¶ 28        In this case, the State presented evidence tending to show Defendant wrote a check on Mr. McGinnas' banking account weeks after Mr. McGinnas' vehicle and house break-ins. There was a driver's license number and a phone number handwritten on the check, which were substantially similar to Defendant's legitimate

driver's license number and phone number. Defendant falsely represented to Ms. Weedman that her father was the maker of the check, and had given her permission to write it. At the time the check was written, Mr. McGinnas was admitted into the hospital. Mr. McGinnas had no family other than a sister who died shortly before his death, and he had no children. Mr. Parker was sole power of attorney for Mr. McGinnas and handled all of his financial matters.

¶ 29        The State presented uncontroverted, substantial evidence to show Mr. McGinnas was a real person. Moreover, the State presented substantial evidence Mr. Parker was the only authorized signatory on Mr. McGinnas' checking account at the time the check in question was written. Unlike *Sinclair,* where the relationship between the defendant and the check maker was unchallenged, the relationship between Defendant and Mr. McGinnas is disputed. In addition, there is substantial circumstantial evidence to allow a jury to infer that the check was forged, and Defendant falsely represented to Ms. Weedman that she had authority to sign the check on behalf of Mr. McGinnas as his daughter. *See State v. Dunbar*, 47 N.C. App. 623, 628, 267 S.E.2d 577, 580–81 (1980) (holding the lack of the defendant's name on the bank's signature card was "sufficient circumstantial evidence from which the jury could conclude that defendant lacked authorization to draw the check"); *see also State v. Seraphem*, 90 N.C. App. 368, 368 S.E.2d 643 (1988).

¶ 30        Contrary to *Phillips* and *Sinclair*, the facts in this case present substantial

evidence tending to show Defendant wrote and signed Mr. McGinnas' check without his authority, in viewing the evidence in the light most favorable to the State. *Blakney*, 233 N.C. App. at 518, 756 S.E.2d at 846. Although there are contradictions in the evidence as to whether Mr. McGinnas had children and whether he authorized the writing of the check, these factual inconsistencies were for a jury to resolve. *See Franklin*, 327 N.C. at 172, 393 S.E.2d at 787.

### 2. *Illustrative Evidence*

In her second argument, Defendant asserts that the trial court erred by considering the check as "substantive proof of what it depicted" when it ruled on Defendant's motion to dismiss, after the check was admitted during Ms. Weedman's testimony as illustrative evidence only. We disagree.

N.C. Gen. Stat. § 8-97 provides:

> [a]ny party may introduce a photograph, video tape, motion picture, X-ray or other photographic representation as substantive evidence upon laying a proper foundation and meeting other applicable evidentiary requirements. This section does not prohibit a party from introducing a photograph or other pictorial representation solely for the purpose of illustrating the testimony of a witness.

N.C. Gen. Stat. § 8-97 (2019).

"Ordinarily photographs are competent to be used by a witness to explain or illustrate anything it is competent for him to describe in words." *State v. Gardner,* 228 N.C. 567, 572, 46 S.E.2d 824, 828 (1948). "Photographs are admissible for

illustrative purposes if they fairly and accurately illustrate the subject of a witness's testimony." *State v. Little*, 253 N.C. App. 159, 168, 799 S.E.2d 427, 433 (2017) (citation omitted).

¶ 34 Here, it is undisputed that the photocopy of the check at issue, entered as Exhibit 1, was introduced by the State at trial for illustrative purposes only. Defendant's counsel objected to its admission, which the trial court overruled. Ms. Weedman testified as to the check she had previously personally observed, and the jury was shown Exhibit 1 following its admission.

¶ 35 Defendant, again relying on *Sinclair*, argues that the "trial court never received substantive evidence that the Defendant forged or uttered a 'check' as defined by statute." However, the *Sinclair* Court was confronted not with the issue of photocopies of checks as substantive evidence, but rather whether a witness' affidavits were admissible only to impeach the witness for her prior inconsistent statements or as substantive evidence. *Sinclair*, 45 N.C. App. at 591, 263 S.E.2d at 815. The Court held that the affidavits constituted inadmissible hearsay evidence; thus, the affidavits could not be used as substantive evidence. *Id.* at 591, 263 S.E.2d at 814–15.

¶ 36 Here, there is no indication the photocopy of the check was used as substantive evidence—rather the record reveals it was used solely as illustrative evidence. The trial court properly admitted the photocopy pursuant to N.C. Gen. Stat. § 8-97 to

"fairly and accurately illustrate" the check, which was the subject of Ms. Weedman's testimony. *Little*, 253 N.C. App. at 168, 799 S.E.2d at 433. For the foregoing reasons, the State put forth substantial evidence Defendant forged and uttered an "instrument" as defined by N.C. Gen. Stat. § 14-119 (2019). *See* N.C. Gen. Stat § 14-120.

## V. Conclusion

We hold the trial court did not err in denying Defendant's motion to dismiss the charges of forgery of a check and uttering a false check because the State presented substantial evidence of all essential elements of the two offenses with which Defendant was charged. *See Phillips*, 256 N.C. at 447, 124 S.E.2d at 148; *Hill*, 31 N.C. App. at 249, 229 S.E.2d at 810; *see also* N.C. Gen. Stat. § 14-120. The photocopy of the check was properly admitted under N.C. Gen. Stat. § 8-97 to illustrate the testimony of a witness. For the foregoing reasons, we find no error.

NO ERROR.

Judges TYSON and COLLINS concur.